B. H. ROBISON, Appellant, *v.* MARY KATHREEN BATE, as Executrix of the Estate of MARY BATE, Deceased, and GEORGE ELDRIDGE, Respondents.

No. 4521

December 13, 1962                    376 P.2d 763

[Rehearing denied January 11, 1963]

*Mann and Scott,* of Elko, for Appellant.

*Gray and Horton,* and *Earl M. Hill,* of Reno, for Respondents.

# O P I N I O N

By the Court, McNamee, J.:

Appellant, as plaintiff below, seeks determination of his and the defendants' (respondents') relative rights to use certain waters of Piermont Creek and of certain springs.

In his first cause of action plaintiff alleges that he is the owner of the O'Neil ranch and Keegan meadow and that defendant Bate is the owner of the Bate ranch which separates the O'Neil ranch and the Keegan meadow. Eldridge, as lessee of the Bate property, is joined as a defendant. Plaintiff further alleges that Piermont Creek flows from the northeast to the southeast in a natural channel across the O'Neil land continuing across the Bate ranch and entering Keegan meadow; that prior to 1905 and each year subsequent thereto, plaintiff's predecessors in ownership of the O'Neil ranch and of the Keegan meadow used the waters flowing in said channel on the O'Neil ranch and the Keegan meadow for irrigation and stock water, thereby establishing in them a vested right to such use of said waters; that in 1957, defendants constructed a diversion ditch across the channel of Piermont Creek at a point on the Bate ranch which prevented waters of Piermont Creek from flowing onto the Keegan meadow, and as a result, plaintiff has been unable to irrigate hay meadows and pasture land on the Keegan meadow to his damage.

Plaintiff's second cause of action concerns water rising from one large and several small springs on the border between another Bate ranch and the Keegan ranch owned by plaintiff. He alleges that prior to 1905 and each year thereafter, his predecessors in ownership of the Keegan ranch used these waters for irrigation and stock water purposes, thereby establishing a vested

right for such use; that defendants have constructed a ditch which carries the water from said springs onto the Bate ranch thereby depriving plaintiff of the use of said water on the Keegan ranch to plaintiff's damage.

Plaintiff prays for a determination that defendants have no right to the use of any of the waters of Piermont Creek or of the springs flowing therein and that plaintiff has a vested right in and to said waters for irrigation and stock water purposes; that the court decree that defendants have no right to the use of the waters from the springs described in his second cause of action, and that a vested right therein be established in plaintiff for irrigation and stock water purposes; and that defendants be enjoined from interfering with plaintiff's rights and from maintaining said diversion ditches.

In addition to certain denials, respondents' answer contains a counterclaim, relating only to plaintiff's first cause of action, wherein they allege that plaintiff has diverted certain waters in which they have a vested interest thereby preventing said waters from reaching the Bate ranch. Respondents also pray for an injunction and for an adjudication of the rights of respondent Bate to the waters of Piermont Creek and of the springs flowing therein, and for a determination that plaintiff has no right to use said waters.

It appears from the court's findings that Piermont Creek flows easterly onto and across the O'Neil ranch and then enters the Bate ranch and after leaving the Bate property flows easterly into the Piermont Slough and Keegan meadow; that a number of springs rise on both the Bate and the O'Neil ranches and, when running, these springs flow into the channel known as the natural channel of Piermont Creek on both the O'Neil and Bate lands. Springs on the Bate lands occur over a hundred yards southwest of the point where Piermont Creek enters the Bate ranch; that prior to 1905, the plaintiff's predecessors in interest at the O'Neil ranch diverted the waters of Piermont Creek for the purpose of irrigating natural and cultivated meadows on the O'Neil ranch, and despite the diversions, in periods of high flow waters would come down the natural channel and flow upon the northern portion of the Bate lands; that in addition to

the surface flow, an underground flow reached the Bate land; that the evidence does not disclose the volume of surplus waters, nor whether the use made by the plaintiff's predecessors of the waters of Piermont Creek exhausted the flow in Piermont Creek; that in 1948 or 1949, plaintiff cut a ditch near the fence separating the O'Neil and Bate ranches which gathers and turns east to the O'Neil ranch surface waters; that the flow onto the Bate ranch now consists of the waters in the natural channel where it enters the Bate ranch plus underground waters; that in 1957, defendant Eldridge had, at a point on the Bate ranch 100 to 150 feet south of the fence, cut a ditch which runs east and south from the channel of Piermont Creek which diverts at least half of the water running in Piermont Creek onto the Bate lands; that there is no evidence of damage caused to any of the parties by these diversions nor to what extent the flow out of the various sloughs and creeks has been reduced.

With respect to the second cause of action, the court found that the large spring has, since about 1900, flowed east some five to six hundred feet and thence north through the Bate ranch where the waters were diverted and used for stock watering and irrigation; that the waters from the other springs arising on the Keegan ranch flow southeasterly; that at a time not stated, plaintiff dynamited the bed of the pond on the Keegan ranch and, in 1957, defendant Eldridge made a cutting of the channel from the large spring; that it does not appear whether the flow from the large spring was affected by plaintiff's action, or whether plaintiff was damaged by an action on the part of the defendants.

The court concluded as a matter of law that the waters escaping from the O'Neil ranch to the Bate lands are waste waters which could not be appropriated by defendants under the rule of In re Bassett Creek, 62 Nev. 461, 155 P.2d 324, and that thus defendants were entitled to no relief by their counterclaim; that plaintiff has failed to show irreparable injury by any action of defendants under his first cause of action; that under

the second cause of action, defendants' predecessors in interest *prior to 1905*[1] *had appropriated the waters of the large spring and have since that time beneficially used those waters for irrigation and stock watering;* and that plaintiff has failed to show irreparable injury for those acts of the defendants of which he complains under his second cause of action. The court thereupon entered judgment denying any relief either to the plaintiff or to the defendants. Appeal is from this judgment.

We need not now determine whether the record supports the findings and conclusions.

Issues were raised by the pleadings which would require the lower court, upon presentation of evidence in support thereof, to make a determination of the relative rights, if any, of the parties to any of the waters subject to appropriation which are described in the pleadings. If insufficient evidence was presented to substantiate a finding that a party has a vested right, it was incumbent upon the court to deny relief on this ground. On the other hand, if the court believed from the evidence that one or some of the parties had acquired vested rights to any part of the waters in question, it was the duty of the court to decree the nature and extent of such rights. NRCP 52 (a).

Evidence was presented from which it appears that the court could have made some such determination. In fact, as pointed out above, the lower court denied relief to plaintiff under his second cause of action because it concluded that defendants' predecessors in interest had validly appropriated the waters of the large spring and thereafter beneficially used the same.

Under NRCP 52 (a) the trial court was required to find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. See Garibaldi Bros. v. Waldren, 74 Nev. 42, 321 P.2d 248; Timney v. Timney, 76 Nev. 230,

---

[1]Water rights acquired by appropriation prior to 1905 were not affected by the enactment of subsequent water laws. In re Manse Springs and Its Tributaries, 60 Nev. 280, 108 P.2d 311.

351 P.2d 611; Poe v. LaMetropolitana Co., 76 Nev. 306, 353 P.2d 454; United Tungsten Corp. v. Corporation Service, Inc., 76 Nev. 329, 353 P.2d 452; Heidtman v. Nevada Industrial Commission, 78 Nev. 25, 368 P.2d 763; Kweskin v. Finkelstein, 223 F.2d 677 (7th Cir., 1955); Maher v. Hendrickson, 188 F.2d 700 (7th Cir., 1951).

In Walsh v. Wallace, 26 Nev. 299, 331, 67 P. 914, 919, 99 Am.St.Rep. 692, this court said:

"A decree should be based upon definite findings, and the findings can be no more definite or certain than the evidence justifies; and where, as in the case at bar (an equitable action to determine conflicting claims of right to the use of water, with the parties before the court), there is nothing whatever in the record upon which to base findings or decision of those rights, either expressly or impliedly, and the findings and decision leave a material part of the controversy undetermined, or to be determined by piecemeal by future litigation, the action of the court in leaving undetermined essential rights of all the parties cannot be upheld, and is contrary to law."

In its findings of fact and conclusions of law the trial court without attempting to adjudicate any rights of the parties to the waters in question denied relief solely upon the ground that no showing had been made of any irreparable injury to any party resulting from any of the alleged acts of the parties. In so doing it lost sight of its primary duty to make definite findings and conclusions with respect to any proven rights of the parties to the waters in question. Indeed, actual damage need not be proven in order to enjoin interference with a vested right. Brown v. Ashley, 16 Nev. 311.

For the reasons given the judgment is reversed and the cause remanded for a new trial. No costs are allowed.

THOMPSON, J., and BROWN, D. J., concur.

BADT, C. J., being disqualified, the Governor designated HONORABLE MERWYN H. BROWN, Judge of the Sixth Judicial District, to sit in his stead.