186 So.2d 915

Robert W. REETZ et al.

v.

Frank ELLIS, Sr., et al.

1 Div. 229

Supreme Court of Alabama.

May 19, 1966.

Tonsmeire & McFadden, Mobile, for appellants.

Jas. L. May, Jr., Brock B. Gordon and McCorvey, Turner, Johnstone, Adams & May, Mobile, for appellees.

COLEMAN, Justice.

Respondents appeal from a decree granting a permanent injunction whereby respondents are prohibited from using a certain lot of land for any commercial enterprise, including the use or operation of any part of the lot for "the rental or leasing of any part thereof for a mobile home or trailer."

Complainants and respondents own lots in a subdivision. The lots are subject to the following restriction:

"'None of said property . . . . shall be used for any other than farming and dwelling purposes but this restriction is not intended to prohibit the processing and sale of products on the premises on which they are produced.'"

Complainants charge that respondents are preparing their lot for use by the public as a mobile home trailer park and that the proposed use will violate the restriction which prohibits a use for other than farming and dwelling purposes. Respondents say the proposed use is a use for dwelling purposes and does not violate the restriction.

The bill does not pray for a temporary injunction, but the judge ordered that "the application for a temporary injunction" be set for hearing on a certain day. It appears that the judge acted under § 1054, Tit. 7, Code 1940. Hearing was held and testimony ore tenus taken on the day set. On the following day the court rendered a final decree granting a permanent injunction. The decree does not require complainants to make any bond.

By assignments of error and argument in brief, respondents make four contentions which may be summarized as follows:

1. The court erred in overruling demurrer to the bill of complaint because the bill is without equity in that complainants failed to aver facts showing that respondents have violated or threaten to violate the use restriction.

2. The court erred in overruling demurrer to the bill of complaint because the bill is without equity in that complainants failed to aver facts showing that the alleged violation will injure complainants.

3. The court erred in granting the injunction because the proof fails to show that respondents' proposed use violates the use restriction.

4. The court erred in granting a permanent injunction when the hearing was on the issuance of a temporary injunction.

1.

The averments of the bill, as to the use intended by respondents, are as follows:

"4. That the Respondents are preparing said Lot 36 for use by various mem-

bers of the public as a mobile home trailer park; that Respondents plan to designate areas of said Lot 36 for areas on which cars shall be parked; that Respondents are planning to build a laundry on said Lot 36 for use by occupants of such mobile home trailers; that Respondents are planning to lease areas of said Lot 36 where mobile home trailers belonging to or being used by various members of the public will be parked, and are planning to manage the operation of the aforesaid mobile home trailer park. Complainants further allege that if a mobile home trailer park is established on said Lot 36, or if said Lot 36 is used as such mobile home trailer park, the aforementioned properties of your Complainants will thereby be caused to have rather substantially lower reasonable market values than they would otherwise have if said Lot 36 were used in compliance with said restriction No. 1."

For reasons set out below, we are of opinion that the quoted averments of the bill are sufficient to show that respondents do propose to use their lot for a commercial or business purpose which is not one of the permitted dwelling purposes.

### 3.

On the hearing, it was stipulated and agreed that respondents are preparing their lot "for use by various members of the public as a mobile home trailer park."

One of the respondents testified as follows: She and her husband, who is the other respondent, own the lot in question. They intend to place "a mobile home park" on their lot. The lot contains ten acres. A mobile home is a dwelling or abode where people live. A mobile home costs from $3,000.00 to $26,500.00. It is transported on wheels. When it is moved into a park, it is blocked up and the wheels are either off the ground or removed from the mobile home. It cannot be moved after it is put on the blocks until the foundation is torn down. When the blocks in the foundation have been removed and the wheels replaced, the home is movable again.

She testified further: The respondents will lease the land to the owner of the mobile home. The owner would have the right to remove the home from the premises. Respondents intend to require the owner of the home to sign a lease giving respondents the right to remove the home from the park if the tenant breaks the park rules. Water, electricity, and telephone service will be furnished to the home. Power and telephone lines are underground. Sewer connections are made to the homes. Mobile homes cannot be pulled by an automobile. A travel trailer can be pulled by automobile. Mobile homes are towed by truck "through a permit and as a rule police escort." Mobile homes are difficult to move. Before one is moved, it is necessary to disconnect the several connections and pull out the foundation. Respondents expect to have people of all ages among their clientele. Respondents have compiled a set of regulations which will apply to the subject property. Respondents "are not going to have anyone with travel trailers overnight."

She testified further: Respondents plan to place a laundry facility on the property. Although most mobile homes have their own washer and dryer, a few do not. Respondents plan to have "a very pretty recreation room with a patio in the back and card tables" which only their tenants would be permitted to use. Respondents will provide a place where the tenants can park their cars. When a home is brought in, a foundation will be put under it.

She also said: Tenants will rent by "the months." No one will be able to move in "without at least being there three months." There will be people "who do all different types of work." Respondents are not going to "prohibit people because they have children." Respondents would reject an applicant if he would have to move before the three months were up. If the tenant paid three months rent and stayed only three

weeks, that would be his business, but respondents do not want tenants "to move like that." The rules drawn up by respondents do not prohibit the sale of a trailer by a tenant, but the purchaser would not have the right to leave it on respondents' lot unless the purchaser obtained permission from respondents. Respondents will have a special area for parking boats and trailers.

She said further: If a person came in with a travel trailer, the witness would refuse to let them rent for two weeks and would refer them to a place across the road which has a sign "travel trailers" and is a travel trailer place. Respondents plan to have the one building, a swimming pool also, and probably a building to store tools in. There will probably be a shower in the swimming pool area. Respondents' lot will probably accommodate between thirty and forty mobile homes. Clothes lines will be provided at the rear of the laundry and will be enclosed out of view with a fence. The park is complete, except for the recreation room. Tenants will pay the electric company for electricity. A separate meter is provided for each space.

We consider together the sufficiency of averments and proof to show that the intended use of the land is a violation of the use restriction. The question for decision is whether the use of a lot for a mobile home trailer park, as pleaded and proved, is a use for dwelling purposes. We hold that the facts averred and proved show that the intended use is not a use for dwelling purposes.

 Respondents rely on the principles that a restrictive covenant on the use of real property will not be extended by implication or enlarged by construction or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement. Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483, 14 A.L.R.2d 1372; Virgin v. Garrett, 233 Ala. 34, 169 So. 711.

 We recognize the last stated rule, but are of opinion that in the instant case we must apply the rule that where the language of the restriction is clear and unambiguous it will be given its manifest meaning. Bear v. Bernstein, supra.

A trailer, whether called simply a trailer or a mobile home, is capable of being used as a dwelling. Whether the trailer remains standing on wheels or is mounted on a foundation made of stone or other material, the trailer may be occupied as a place of abode and used for dwelling purposes. If such a trailer be placed on a lot of land and be there occupied by one or more persons as a place of abode, we think such use of the land would be a use for dwelling purposes.

If the facts here were that respondents proposed to place a trailer on their lot and make their home in the trailer, we are of opinion that respondents would be proposing to use their lot for "dwelling purposes" and that such use would not violate the restriction. Such use, however, is not the use alleged in the bill or shown by the proof.

 The allegations are that respondents are preparing their lot for use by various members of the public "as a mobile home trailer park;" are planning to build a laundry on the lot; are planning to lease areas of the lot where trailers belonging to or used by the public will be parked; and are planning to manage the operation of the mobile home trailer park.

The proof supports these allegations. It is shown that spaces for thirty to forty trailers will be leased, that the lessee will have the right to move at any time, although respondents expect to require a lease for a minimum term of three months.

We are of opinion that the pleading and proof show that the purpose for which respondents propose to use their lot is not included within the meaning of the term "dwelling purposes," as used in the restriction. We think it is alleged and proved that

the proposed use is for a commercial purpose and not for dwelling purposes.

If a hotel were erected on respondents' lot, some or all guests might remain at the hotel for a term of three months or longer, but such a fact would not change the character of the use of the hotel lot. It is true that such guests might be said to dwell in the hotel, but we do not think it could reasonably be said that the hotel or the lot were not being used for commercial purposes as distinguished from dwelling purposes. A person may dwell in a hotel, but the use of the hotel and the land on which it stands would be for commercial purposes and not for dwelling purposes.

We think the use of a lot for a mobile home trailer park is a use for a commercial purpose and not for dwelling purposes, as the term dwelling purposes is used in the restriction, and we think this is correct although we recognize that a person may dwell in a trailer, just as he might dwell in a tent or other structure of more or less permanence. To use a lot to dwell on is a use for dwelling purposes, but to use a lot as a place on which to operate a mobile home trailer park is a use for commercial purpose and is not, as we see it, a use for dwelling purposes.

■ In a case where property was restricted "to be used for residence purposes only," the court was called to decide whether the owner's use of his residence for the purpose of giving singing lessons violated the restriction. The court held that the use did violate the restriction. While the violation did not relate to use for a mobile home trailer park, we think what the court said correctly expresses reasons which apply in the instant case. The court noted that covenants restraining the use of real property are strictly construed in favor of the free use of such property, but that effect will be given to the manifest intention of the parties when the intention is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by the covenant have not been relinquished or otherwise lost.

With respect to the question for decision, the court said:

"The covenant under which appellee claims the right to injunctive relief is the one which provides that appellant's property 'is to be used for residence purposes only.' There is no ambiguity in the quoted expression, nor doubt as to its meaning, when considered in the light of the entire transaction in which it was used and its component words are accorded their ordinary, well-understood meaning. The word 'residence' is one of multiple meanings, but the context in which it is used is [sic] this instance clearly indicates its meaning to be a dwelling house where a person lives in settled abode. The word, in this instance, relates solely to the use or mode of occupancy to which the property may be put. The word 'only' is a limiting term which qualifies the word with which it is grammatically connected. As here employed it is synonymous with the word 'solely,' or the equivalent of the phrase 'and nothing else.' It qualifies the phrase 'to be used,' with like effect as if the covenant had read that the property 'is to be used only for residence purposes.' When so employed and understood, it necessarily excludes all uses of the property other than for residence purposes, and the interposition of other negative terms specifically prohibiting the use of the property for business, mercantile, or other similar purposes are unnecessary.

. . . . . . .

"Instances are not lacking in which other courts have held or intimated that property restricted to use for residence purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or the following of some professional pursuits so long as the latter use is in fact casual, infrequent, or unobtrusive and results in neither appre-

ciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents. This view, however, further requires such additional use to be so reasonably incidental to the prescribed use and such a nominal or inconsequential breach of the covenants as to be in substantial harmony with the purpose of the parties in the making of the covenants, and without material injury to the neighborhood. . . ." Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127.

From the record in the case at bar, it is shown that the instant restriction appears on the recorded plat of the subdivision in which respondents' lot is located. In addition to the quoted restriction, the owner of the subdivision approved additional restrictions which provide that no building shall be located nearer to the line of any road than seventy-five feet, that drains shall be kept open by the owners of property abutting thereon, and that any of the restrictions may be omitted or modified by an instrument duly executed by the owners of not less than sixty per cent of the acreage in the subdivision and recorded as therein provided.

The restrictions indicate the intention to restrict the use to "farming and dwelling purposes" and to no other use. It is apparent that the effectiveness of the restriction will be destroyed if respondents and others are permitted to construct and operate mobile home trailer parks as respondents propose to do.

Other courts have considered the question whether a trailer camp is a residence or dwelling within the terms of a zoning ordinance. In affirming the denial of a permit for a trailer camp within a residential area, one court said:

". . . It is my opinion that in the present case reasonable men would never consider a trailer camp (and particularly one encompassing 38 trailers with the attendant facilities) as a dwelling or dwellings within the comprehensive plan

in the development of the municipality as embodied in the Zoning Ordinance of 1939." Michaels v. Township Committee of Pemberton, 3 N.J.Super. 523, 67 A.2d 324.

In affirming the issuance of an injunction against use of property in a residential district for parking and servicing house trailers, the Court of Appeals of Louisiana said:

"A careful reading of the Comprehensive Zone Law convinces us that the operation of a 'trailer court' is a commercial venture which was never contemplated nor permitted by virtue of the provisions therein contained relating to the designation of 'A' residential districts." City of New Orleans v. Louviere, (La. App.) 52 So.2d 751.

The holding in *Louviere* was approved and followed in City of New Orleans v. Lafon (La.App.) 61 So.2d 270.

Respondents cite Schaeffer v. Gatling, 243 Miss. 155, 137 So.2d 819, where a lot was subject to the restrictions that it should be "used strictly for residential purposes," no residence should be erected on the land costing less than $6,000.00, and the front of said residence should be set back from the front line not less than thirty-five feet. The owners, husband and wife, purchased three lots, 7, 8, and 9 in 1958. After purchasing the lots, they constructed a home on lots 7 and 8 and had since lived thereon. In 1960, they purchased a mobile home for more than $6,000.00, placed it on lot 9, and set the mobile home back thirty-five feet from the front line of the lot. After the mobile home was placed on concrete piers with the wheels remaining on the trailer, the daughter, son-in-law, and two grandchildren of the owners moved into the trailer and made it their home. The Supreme Court of Mississippi held that such use of the lot did not violate the restriction which required that the property be used strictly for residential purposes. We are not disposed to disagree. The use was not for the purpose of operating a mobile home

trailer park as in the case at bar. We do not think the Mississippi case is in conflict with our holding in the instant case.

Being of opinion that the averments of the instant bill show a violation of the restriction and that the bill is not lacking in equity for failure to show such violation, we hold that respondents' first contention is without merit.

Being also of opinion that the facts proved show that respondents propose to violate the restriction, we hold that respondents' third contention is without merit.

## 2.

■ Respondents have cited no case to support their second contention that the bill is without equity because complainants failed to aver facts showing injury to complainants. We think it sufficient answer to note that the text writers state that the right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction. 20 Am.Jur.2d 879, Covenants, Conditions, etc., § 314. See 43 C.J.S. Injunctions § 87, p. 585.

■ In Note 97 [a], 32 C.J. 208, Injunctions, § 324, the reasons for this rule are stated to be that the owner of land, when selling to another, may insist on such covenants as he pleases touching its use and has the right to define the injury for himself; and that, when the covenant is broken, an injunction should issue because, from the very nature of the case, the remedy at law is inadequate.

We hold that the bill was not lacking in equity for failure to aver facts showing injury to complainants arising from the proposed use of respondents' lot.

## 4.

We think respondents' fourth contention is well taken.

Granting a permanent injunction on an application for temporary injunction was held to be reversible error in Methvin v. Haynes, 254 Ala. 58, 46 So.2d 815; Persons v. Summers, 274 Ala. 673, 151 So.2d 210.

■ In the instant case, the judge's fiat recites that the petition "for a temporary injunction" being presented, and the court being of opinion that no substantial injury is likely to result from delay, the "application for a temporary injunction" is set down for hearing on the appointed day. Respondents were given notice that an application for "A TEMPORARY INJUNCTION" had been filed and would be heard at the appointed time. Respondents' answer was not filed until the day set for hearing. Until we reach the final decree, which is dated the day after the hearing, we find no indication that the hearing was for anything other than a temporary injunction. On the record before us, it does not appear that, prior to the decree, respondents were afforded any opportunity to object to the issuance of a permanent rather than a temporary injunction.

■ Tit. 7, §§ 1043, 1056, and 1059 provide for the giving of a bond before the issuance of a temporary injunction or temporary restraining order. A decree which grants a temporary injunction is erroneous if the decree fail to require a bond. Morris v. Sartain, 224 Ala. 318, 140 So. 373; Loop National Bank of Mobile v. Cox, 255 Ala. 388, 51 So.2d 534.

We do not agree with complainants that it was not reversible error to issue a permanent injunction on application for temporary injunction.

For that error, the decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.