244 So.2d 585

**MASON CORPORATION, a Corporation**

v.

**John E. KENNEDY, Jr.**

**6 Div. 800.**

Supreme Court of Alabama.

Feb. 11, 1971.

Kenneth Perrine, Birmingham, for appellant.

Speaks & Burnett, Clanton, for appellee.

MADDOX, Justice.

Appellant, Mason Corporation, filed an original bill seeking temporary and perma-

nent injunctive relief and damages against John E. Kennedy, Jr., the complaint charging that Kennedy had signed an employment contract containing a noncompetition clause and had violated his agreement by going to work with a competing firm within the restrictive period.

Upon presentation of the bill, the trial judge, pursuant to Title 7, § 1054, determined that no substantial injury would result to complainant Mason from delay and issued a fiat setting the cause for hearing on the temporary injunction on May 4, 1970. The date for hearing was reset for June 24, 1970, at which time the note of testimony shows that the cause was submitted in behalf of Mason upon the bill of complaint, as amended, the stipulations of the parties and oral testimony, and in behalf of Kennedy upon his answer, the stipulations of the parties and the oral testimony, with the minute entry in the record reading as follows: "On June 24, 1970, this cause is submitted for final decree upon pleadings and proof as noted."

On June 25, 1970, the court entered a final decree refusing to grant the temporary injunction and dismissed the bill. Mason appeals from this decree.

Appellant Mason, formerly Southeastern Tool and Die Co., is an Alabama corporation with its principal place of business in Birmingham. It is engaged in the manufacture, tooling and selling of hardware for aluminum and metal home improvement products which it distributes throughout the United States.

Appellee Kennedy was employed by Mason as the exclusive sales representative covering the Tennessee-Kentucky territory from January 5, 1959 to June 30, 1967.

In 1966 certain of Mason's employees left the firm and formed a competing company, Perfection Metal & Supply Company. Immediately thereafter, Mason entered into "noncompetition" employment agreements with its remaining salesmen, including Kennedy, whereby the salesmen agreed not to compete with Mason or solicit its customers, etc., in the territory covered for Mason for a period of five years after termination of employment with Mason.

Kennedy continued to work for Mason under the noncompetition agreement until 1967, when he was fired for his failure to produce adequate sales. Upon termination Kennedy received all salary and other benefits accrued to him with the exception of a certain portion of his reserve account in a Profit Sharing Trust held in escrow pending a legal action.

Kennedy received on June 11, 1968 a lump sum payment representing the amount in his reserve account to which he was entitled and at that time he signed another noncompetition agreement with Mason which prohibited him from competitive employment for three years from the date he was fired. It is clear from the evidence that Kennedy understood the provisions and obligations of both agreements.

After being terminated by Mason, Kennedy was employed by General Electric Supply Co. as a salesman in the Birmingham area. His salary was $600.00 per month plus commissions which during his first year amounted to $500.00 over his salary. Kennedy voluntarily left the Electric Company and on November 1, 1969, was employed by Perfection on a draw of $700.00 per month to be charged back to his commissions. At the time of trial his commissions had not equaled his draw and he was indebted to the company.

Kennedy was assigned to cover the Tennessee-Kentucky area for Perfection, the same area he had covered while employed by Mason. Other territories were available, but Kennedy was not offered these. Between November 24, 1969 and the trial date Kennedy made sales totaling $12,445.94 to customers he had formerly contacted for Mason.

Mason argues that the trial court erred in: (1) rendering a final decree at the conclusion of the hearing set to determine whether a temporary injunction should issue; (2) abusing its discretion by refusing to enjoin Kennedy from violating the noncompetition agreements; and (3) attempting to use its discretion to rewrite the contract, declaring that Kennedy was absolved from further compliance because he had refrained from violating the agreement for a period of two years and four months.

As to appellant's first contention, we find no error.

We have been unable to find a decision which presents an answer to the exact question here presented, but in Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966), a similar, though not identical, factual situation existed. There, this Court held that it was error for the trial court to grant a *permanent* injunction upon application for a *temporary* injunction, citing Methvin v. Haynes, 254 Ala. 58, 46 So.2d 815 (1950); and Persons v. Summers, 274 Ala. 673, 151 So.2d 210 (1963).

In *Reetz* the court stated:

"In the instant case, the judge's fiat recites that the petition 'for a temporary injunction' being presented, and the court being of opinion that no substantial injury is likely to result from delay, the 'application for a temporary injunction' is set down for hearing on the appointed day. Respondents were given notice that an application for 'A TEMPORARY INJUNCTION' had been filed and would be heard at the appointed time. Respondents' answer was not filed until the day set for hearing. Until we reach the final decree, which is dated the day after the hearing, we find no indication that the hearing was for anything other than a temporary injunction. *On the record before us,* it does not appear that, prior to the decree, respondents were afforded any opportunity to object to the issuance of a permanent rather than a temporary injunction." (Emphasis added.)

We note that the court in *Reetz* was careful to point out that *the record* contained nothing to indicate that the hearing there was for anything other than a temporary injunction. The trial court's order setting the cause down for a hearing in this cause is similar to the order in *Reetz,* but here we have a "Minute Entry" *in the record* which states unequivocally that on June 24, 1970 the cause was "submitted for *final decree upon the pleadings and proof as noted."* Therefore, we think *Reetz, Methvin* and *Persons* are distinguishable. However, we do not hold that a trial court in every instance may dismiss a cause after hearing on a request for a temporary injunction without committing error. Cf. Ex parte Baptist Tabernacle of Anniston, 242 Ala. 670, 8 So.2d 170 (1942), where the case was submitted on the motion of respondents to dissolve the temporary injunction, not on the merits for final decree on pleadings and proof, and it was held that the trial court erred in dismissing the bill.

As to the appellant Mason's argument that the trial court abused its discretion by failing to grant the injunction prayed for, the general rule is that contracts in restraint of trade are looked upon with disfavor, and every presumption is to be indulged in favor of the findings of the trial judge where testimony is ore tenus, and his findings will not be disturbed unless palpably wrong. See White Dairy Co., Inc. v. Davidson, 283 Ala. 63, 214 So.2d 416 (1968). Appellant very candidly admits that this is the rule of law but claims the undisputed evidence here shows abuse of the trial court's discretion.

In determining whether the decree of the lower court was palpably wrong, it is necessary to look to the general principles concerning employment contracts. Alabama's policy respecting noncompetition agreements is set out in §§ 22, 23 and 24 of Tit. 9 of the Code.

**644**

Sections 22 and 23 read as follows:

§ 22: "Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections is to that extent, void."

§ 23: "One who sells the good will of a business may agree with the buyer, and one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."

Section 24 provides for further exceptions as to partnership agreements and is not here applicable.

The general rules applicable to noncompetition agreements are expressed in the following excerpts cited with approval in Parker v. Ebsco Industries, Inc., 282 Ala. 98, 209 So.2d 383 (1968).

"Generally, * * *, it is the rule in the absence of contrary statute that agreements by which an employee as part of his contract of employment undertakes not to enter into a competing business on leaving his employer's service are sustained if they are no wider than reasonably necessary for the protection of the employer's business, and do not impose undue hardship on the employee, due regard being had to the interests of the public."

" * * * Employments which involve acquisition by the employee of confidential knowledge and acquaintance with the employer's clientele are regarded as peculiarly appropriate to restrictions against the use of such knowledge in competition with the employer. .

"As to the reasonableness of such covenants, 'the test generally applied * * * is whether or not the restraint is necessary for the protection of the business or good will of the employer, and, if so, whether it imposes on the employee any greater restraint than is reasonably necessary to secure to the business of the employer, or the good will thereof, such protection, regard being had to the injury which may result to the public from restraining the breach of the covenant, in the loss of the employee's service and skill and the danger of his becoming a charge upon the public. * * *' "

■ We do not set out all the tendencies of the evidence which would support the finding and conclusion by the court that the noncompetition agreement held by Mason was unreasonable. We have examined the evidence and think it sufficient to support the trial court's decree. From the decree it appears that the court was impressed by the fact that for two years and four months after Kennedy was fired he did not engage in a business competitive with Mason.

■ This court has said that in determining whether injunctive relief is appropriate, there should be taken into account such considerations as the nature or character of the employment, the size and condition of the locality to which the prohibition extends, the duration of the prohibition, and the consideration moving to the employee for his agreement to the restriction. Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). Applying these general principles to the circumstances of this case, the nature and character of Kennedy's employment was that of salesman; the size and condition of the locality was Tennessee and Kentucky and there was evidence that many other companies competed with Mason in this area besides Perfection, Kennedy's present employer; the duration of the restriction was for five years and the "consideration" moving to

employee Kennedy is uncertain. The testimony in the record seems to indicate that all Mason's salesmen were required to sign noncompetition agreements in April, 1966, apparently because some of Mason's salesmen had left them to form a company which would be competitive. The record does not appear to indicate that Kennedy received any additional compensation or benefits for signing the agreement. The record also indicates that Mason required Kennedy to sign a second noncompetition agreement *after he was terminated before he would be paid lump sum benefits under a Profit Sharing Trust.*

While five year restrictions have been upheld in Alabama, (See Slay v. Hess, 252 Ala. 455, 41 So.2d 582), the reasonableness of such a restriction must depend on the facts of each case. There was evidence presented here that a new salesman could be trained in Kennedy's old territory within a year or a year and a half, and it is undisputed that Kennedy honored the noncompetition agreement for over two years.

▇ After reviewing the evidence, we do not find that the trial court abused its discretion or that the court decree is palpably wrong.

This brings us to appellant's last argument that the lower court abused its discretion by stating: "Respondent's compliance with the crucial terms of the contract of employment for a period of more than two (2) years reasonably absolves and excuses him from any further compliance with the terms of the contract." Appellant argues that this was an attempt to rewrite the contract between the parties. Basically, this statement is a reiteration of the trial court's holding that the five year restriction here was unreasonable. Of course, this finding raises the question of whether the court could rewrite a restrictive contract, enforcing only that part which it considered reasonable.

This court apparently has not established the rule that a contract in restraint of trade in which the territory or time stipulated is unreasonably extensive may be divisible as to space and enforced in equity for a reasonable time and within a reasonable area, but in McNeel Marble Co. v. Robinette, 259 Ala. 66, 65 So.2d 221 (1953), this Court indicated that a temporary injunction may be granted to be applicable only to a limited territory, notwithstanding that the contract embraced a much larger territory, which might be unreasonable and therefore unenforceable. Other jurisdictions have adopted such a procedure. See Ferrone v. Mucci, 335 Mass. 87, 138 N.E.2d 601 (1956); Wilson v. Century Papers, Inc., 397 S.W.2d 314 (Tex. Civ.App.1965); Credit Bureau Management Co. v. Huie, 2254 F.Supp. 547 (E.D. Ark.1966).

▇ We hold that a court of equity has the power to enforce a contract against competition although the territory or period stipulated may be unreasonable, by granting an injunction restraining the respondent from competing for a reasonable time and within a reasonable area.

▇ We cannot say that the trial court was palpably wrong here in finding that Kennedy, by not competing with Mason for two years and four months, had voluntarily restrained himself for a reasonable period of time, thereby making an injunction unnecessary.

Finding no reversible error based upon the argued assignments of error, the cause is due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.