SCOTTY GLADSTONE and LORRAINE GLADSTONE, APPELLANTS, *v.* STEPHEN D. GREGORY and CHARLENE A. GREGORY, RESPONDENTS.

No. 9940

June 25, 1979                                    596 P.2d 491

---

*Deaner, Deaner & Reynolds,* Las Vegas, for Appellants.

*Houston & Moran,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

The parties in this action own adjacent residential properties located within a Las Vegas subdivision referred to as "Moore's Addition #1." The property owned by appellants Scotty and Lorraine Gladstone is somewhat higher in elevation than that of respondents, providing appellants with a view over the Gregory home toward Sunrise Mountain. In 1960, a document entitled "Declaration of Restrictions" was filed in the Clark County Clerk's Office, establishing several restrictions to run with the land, including a one-story height limitation on buildings within Moore's Addition #1.[1] The Gregorys' title deed reflected the existence of the restrictive covenants.

---

[1] The Declaration of Tract Restrictions provides in pertinent part: "Moore, Inc. . . . does hereby establish the following restrictions, covenants and conditions subject to which said parcels of land, lots and portions thereof shall be held, used, leased, sold and conveyed, each of which is for the benefit of said property and shall apply to and bind the respective successors in interest and assigns of Declarant and their heirs, executors, administrators, as follows:

"1. No building other than one detached single family, one story, private residence, a private garage for the use of the occupants of such residence and other usual and appropriate outbuildings, strictly incident to and appurtenant to a private residence, shall be erected or maintained on any lot or plot in said subdivision. . . ."

The document sets forth further various restrictions including: a minimum

On May 16,1977, the Gregorys commenced construction of a second-story addition to their home. Appellant Scotty Gladstone noticed his neighbors' construction, contacted the Clark County Building Department and on May 18, 1977, was informed that the Gregorys were indeed adding a second story to their residence. On May 20, 1977, Gladstone sent Mr. Gregory a notice objecting to the addition as contrary to recorded restrictions. The following day, the men conversed twice regarding the addition, but Gladstone adhered to his objection. On May 23, 1977, when construction continued, Gladstone initiated legal action in the district court, seeking a temporary and permanent injunction to restrain the proposed addition. After trial on June 15, 1977, the court concluded the Gregorys were charged with constructive notice of the restrictive covenants contained in the recorded declaration, and further concluded the construction violated the recorded restrictions. However, the court denied injunctive relief based on changed conditions in the neighborhood and abandonment of the restrictions by the homeowners within Moore's Addition #1.

The Gladstones appeal from the order denying injunctive relief, claiming there was no substantial evidence supporting the district court's conclusions that: 1) changes in the area were

---

floor area; set back requirements; prohibition of use of any outbuildings as a residence; a procedure requiring approval by an architectural committee of plans for erecting any permanent structure as conforming, harmonizing and not interfering with the reasonable enjoyment of any other lot; and utility and drainage easements.

The document also provides:

"13. The various restrictive measures and provisions of this declaration are declared to constitute actual equitable covenants and servitudes for the protection and benefit of the lots or parcels in said subdivision and failure by the declarant or any other person or persons entitled so to do to enforce any measure or provision upon violation thereof shall not stop or prevent enforcement thereafter or be deemed a waiver of the right so to do.

"14. These covenants, restrictions and agreements shall run with the land and shall continue in full force and effect until nineteen ninety (1990), at which time same shall be automatically extended for successive periods of ten (10) years, unless by a duly executed and recorded statement the then owners of fifty (50) percent or more of said lots in said lots in said subdivision shown on the recorded map thereof elect to terminate or amend said restrictions in whole or in part.

"15. Each grantee of a conveyance or purchaser under a contract of agreement of sale by accepting a deed or a contract of sale or agreement of purchase, accepts the same subject to all of the covenants[,] restrictions, easements and agreements set forth in this Declaration and agrees to be bound by the same.

"Damages for any breach of the terms, restrictions and provisions of this Declaration are hereby declared not to be adequate compensation, but such breach and/or continuance thereof may be enjoined or abated by appropriate proceedings of this Declarant, or by an owner or owners of any lot or lots adjoining said parcel or lot."

so great as to nullify the benefits of the restrictions, rendering their enforcement inequitable; and 2) past violations of the restrictions by homeowners constituted an abandonment of the restrictions. We agree.

Viewed most favorably to respondents, the evidence establishes the following. Eighteen years have passed since the restrictions were initially imposed. The restricted homes are small, measured by current standards and would by enhanced in value by removal of the one-story limitation. Zoning regulations permit two-story residences and such structures do exist in the surrounding area. Several Moore's Addition #1 homeowners have enclosed their garages—violating another restriction[2]—and have constructed porches and swimming pools, all without submitting plans to an architectural committee, as required by the declaration. A petition was introduced into evidence, purportedly signed by 85 of the 99 homeowners within the subdivision, indicating their desire to relieve their property of the one-story limitation.

## 1. *Changed conditions*

Changed conditions sufficient to justify nonenforcement of an otherwise valid restrictive covenant must be so fundamental as to thwart the original purpose of the restriction. Western Land Co. v. Truskolaski, 88 Nev. 200, 495 P.2d 624 (1972); Murphey v. Gray, 327 P.2d 751 (Ariz. 1958); Sandstrom v. Larsen, 583 P.2d 971 (Hawaii 1978); South Shore Homes Ass'n v. Holland Holiday's, 549 P.2d 1035 (Kan. 1976).

The respondents had the burden to show the changed conditions have so thwarted the purpose of the one-story limitation that it is of no appreciable value to other property owners and it would be inequitable or oppressive to enforce the restriction. Exchange Nat. Bank of Chicago v. City of Des Plaines, 336 N.E.2d 8 (Ill. App. 1975). The purpose of the one-story limitation is not stated in the declaration. The trial court found the height restriction evidenced an intent to prevent observation from a higher elevation to the dwelling and surrounding areas of adjoining property. In so finding, the court apparently rejected appellants' theory that the purpose also included preservation of any view enjoyed by adjoining property owners. Although the purpose of the height restriction involves a question of fact, we doubt the reasonableness of the trial court's

---

[2]The court found the garage enclosures violated the restriction against using a garage or any other outbuilding as a residence.

finding that view preservation comprised no part of that purpose. *See* Dickstein v. Williams, 93 Nev. 605, 571 P.2d 1169 (1977); King v. Kugler, 17 Cal. Rptr. 504 (Cal.App. 1961); Foster v. Nehls, 551 P.2d 768 (Wash.App. 1976). Appellants' view over respondents' home is neither panoramic nor of the highest quality, but it nevertheless exists, is of value to him, and should be protected. *Cf.* Sandstrom v. Larson, *supra* (where view was diminished by matter not within homeowner's control, remaining view was all the more valuable and worthy of protection).

Even assuming the height restriction was intended only to protect privacy and not view, the foregoing evidence of changed conditions utterly fails to show that purpose has been thwarted in any manner. The privacy benefits exist just as when the declaration was recorded. *See* Murphey v. Gray, *supra.* Neither the increased monetary value of the properties without the building height limitation nor the less stringent zoning regulations justify removal of the restriction. Western Land Co. v. Truskolaski, *supra;* Murphey v. Gray, *supra.*

## 2. *Abandonment*

As with changed conditions outside the restricted area, in order for community violations to constitute an abandonment of a restrictive covenant they must be so general and substantial as to frustrate the original purpose. Western Land Co. v. Truskolaski, *supra;* Holmquist v. D–V, Inc., 563 P.2d 1112 (Kan.App. 1977).

Other than the Gregory residence, all homes within Moore's Addition #1 remain one-story. It may be questioned whether the few garage conversions and other "continuous violations" of the declaration of restrictions by the homeowners were sufficiently general and substantial to evidence an abandonment of the specific restrictions they violate.[3] However, even that assumed, the violations would not amount to an abandonment of the building height restriction since it has never been violated. *Cf.* Swaggerty v. Petersen, 572 P.2d 1309 (Or. 1977); 5 Powell on Real Property, § 683 (right to enforce one restrictive covenant is not lost by aquiescence in the violation of another). None of the violations interfered with any other property owner's privacy (or view). Thus, the trial court had no basis for

---

[3] I.e. restriction against use of garage as a residence; restriction requiring submission of plans to and approval thereof by an architectural committee prior to erecting any permanent structure. *See* n. 1., *supra.*

finding the purpose of the one-story limitation was frustrated by community violations. Findings of fact can be no more definite than the evidence justifies. Robison v. Bate, 78 Nev. 501, 376 P.2d 763 (1962). Accordingly, the court erred in concluding the restriction was abandoned.

The homeowners' petition expressing their desire to remove the one-story limitation was ineffective to do so since it did not comply with the amendment procedure specified in the delaration. *See* n. 1, ¶ "14," *supra. See also* Ridge Park Home Owners v. Pena, 544 P.2d 278 (N.M. 1975); Hein v. Lee, 549 P.2d 286 (Wyo. 1976).

Respondents contend the trial court properly denied injunctive relief because the injury they would incur if relief were granted is greatly disproportionate to the benefits which would inure to appellants. We reject this contention. The equitable principle of relative hardship is available only to innocent parties who proceed without knowledge or warning that they are acting contrary to others' vested property rights. Foster v. Nehls, *supra.* Respondents clearly assumed the risk of increased damages when they continued construction after notice of Gladstone's objections. *Id.* Moreover, respondents had constructive notice of the building limitation. Where one takes land with notice of restrictions, equity and good conscience will not permit that person to act in violation thereof, and one seeking to enjoin such a violation is entitled to relief regardless of relative damage. Sandstrom v. Larsen, *supra;* Swaggerty v. Petersen, *supra;* McDonough v. W. W. Snow Construction Co., Inc., 306 A.2d 119 (Vt. 1973); Holmquist v. D–V, Inc., *supra.*

In these circumstnces, the court would balance equities only if appellant Gladstone had engaged in some inequitable conduct. Welshire, Inc. v. Harbison, 91 A.2d 404 (Del. 1952); Evangelical Lutheran Church v. Sahlem, 172 N.E. 455 (N.Y. 1930); 5 Powell on Real Property § 685. Respondents do not contend appellants have acted inequitably.

Finally, respondents argue appellants are not entitled to an injunction because they have shown no irreparable harm and money damages are an adequate remedy. Generally, restrictive covenants may be enforced irrespective of the amount of damages which will result from a breach. Payette Lakes Protective Ass'n v. Lake Reservoir Co., 189 P.2d 1009 (Idaho 1948).

Actual damages need not be shown. Reetz v. Ellis, 186 So.2d 915 (Ala. 1966); 7 Thompson on Real Property 187 § 3171. *See* Robison v. Bate, *supra. See also* n. 1, final ¶, *supra.* Respondents' reliance on Merideth v. Washoe Co. Sch. Dist., 84 Nev. 15, 435 P.2d 750 (1968) is misplaced. *Merideth* recognized restrictive covenants as interests in property or property rights to be accorded full legal recognition and protection. In that case, we held that extinguishment of such a right by public authority for public use is compensable. We did not hold money damages an adequate remedy where a restrictive covenant is violated by a private individual charged with notice of the restriction.

The order denying appellants' motions for temporary and permanent injunction is reversed and the cause remanded with instructions to enter the appropriate order.