MR. JUSTICE SHEEHY
dissenting;
The reasons given to dissolve the preliminary injunction by the majority will be inexplicable to the District Court, as indeed they are to me.
*185 There is no showing in the majority opinion that the plaintiff here failed to establish a prima facie right to preliminary injunctive relief, Troglia v. Bartoletti (1969), 152 Mont. 365, 451 P.2d 106; nor that the District Court in issuing the preliminary injunction made an erroneous conclusion of law, Ring v. Spina (2d Cir. 1945), 148 F.2d 647. Instead, the majority dissolves the injunction on an incorrect perception of the “status quo involved” and something that is defined as “a duty to minimize the damages or injury to all parties” which I determine to be a reference to irreparable harm or damages. The opinion constitutes a stepout in the field of injunctive law, a step which I refuse to take.
In this dissent, I will argue that: (1) the District Court was required by law to make its findings here; (2) the issues on which the District Court made findings and conclusions were issues raised by the appellant in opposition to the preliminary injunction; (3) a fullblown trial of those issues occurred before the District Court; (4) the preliminary injunction was properly issued by the court; (5) the majority opinion misconstrued the “status quo” requirement for preliminary injunctions; and (6) the “irreparable harm” is presumed in cases of this sort.

I. The District Court had a duty to make findings of fact here.

The duty of the District Court to make findings upon the face issues presented in the hearing on the motion for a preliminary injunction is clear. Rule 52(a), M.R.Civ.P. provides:
“. . . in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.”
It is an established rule of law that the findings of fact are to receive such a construction as will uphold rather than defeat the judgment thereon. Ballenger v. Tillman (1958), 133 Mont. 369, 324 P.2d 1045.

II. Cr III. The appellants raised the issues that the district judge decided.

The findings of fact and conclusions of law required to be made by the District Court in matters tried without a jury are the founda *186 tion for the decision of the court. The findings must be ultimate facts, which are essential to determine the conclusions upon which the court rests its decision. Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936, 36 St.Rep. 891. The findings, of course, must relate to the material issues of fact, and the conclusions, based upon the findings, must dispose of the legal issues raised in the matter before the court.
The majority opinion objects to the District Court reaching a “final opinion” on the merits of the principal case. However, the majority opinion ignores this record in which the District Court entered findings and conclusions which affirmatively found: that the present use of the triplex is materially different from past use; that the plaintiff’s action is not barred by the doctrines of waiver, estoppel or laches; and that the homeowners did not discriminate against a certain class of residents so as to create a problem of equal protection.
Those same issues were raised by the defendants at the motion for the preliminary injunction hearing. They insisted to the district judge that those same issues were a bar to the issuance of the preliminary injunction.
K & S Partnership entered into a contract for deed with Leona S. Froney on January 2, 1980, for the purchase by the partnership of Lot 1, Block 4, Grandview Subdivision. Brad Pemberton, a member of Kappa Sigma Fraternity, is the only partner at present. Pemberton, with loans from other Kappa Sigma members in Billings and with Fraternity Building Corporation assets of some $2,000 or $3,000 funded the downpayment. Although Pemberton appears to deny that the purpose of the purchase was to provide a chapter house for the Kappa Sigma unit at Eastern Montana College of education, at the time of the trial, there were eight male students living in the residence on the purchased premises, seven members of Kappa Sigma, and one transfer student associated with Sigma Nu.
K & S took possession of the premises on January 2, 1980; plaintiffs filed their verified complaint on March 14, 1980.
*187 The district judge found, and the evidence sustains her, that Leona Froney began renting portions of her house in 1940, but that in all the period of time until she sold the house, Leona Froney exclusively lived on the ground floor of the home. It was Leona Froney’s practice to have only one renter in the basement apartment and one in the upstairs apartment and that she had extremely strict rules with respect to the conduct of the renters. Leona Froney testified that the rental money she received was necessary to sustain her and her daughter, whom she was educating. The court found that these facts were known by the neighbors, but that the "technical violations” of the restrictions were overlooked because of their concern for Leona Froney’s welfare.
With the advent of K & S Partnership, the use of the premises changed to this extent: there were eight people living on the premises, none related to each other and no owner on the premises. The tenant on the main floor, a member of Kappa Sigma Fraternity, was the “property manager” who was in charge, and who was paid $25 for his services by K & S Partnership.
In simple terms, Leona Froney was not operating a fraternity house; K & S Partnership was. The operation of a fraternity house is not the renting of a “three-family unit” which is the purported status-quo upon which the majority depends.
The principal partner testified that he would not have purchased the house if it could not have been used as it is now being used, yet he knew of the restrictions because they were in the title insurance policy he procured at the time of purchase, and he had been informed by a lawyer that his proposed usage of the house would pass muster under the restrictions. Leona Froney testified:
“Q. They didn’t try to conceal the fact that they intended to use it as a fraternity house at all, did they? A. No, they had said that they had already found lawyers that said it was okay.”
Leona Froney was referring to a conversation that occurred during the negotiations for the purchase of the house.
It was the foregoing new use of the dwelling house that the district judge found “violates the restrictions” and should be en *188 joined. There can be no cavil that K & S Partnership’s use of the dwelling violates that section of the restrictions which states that the buildings in the subdivision shall be “one family dwellings — a detached building, designed for, or occupied exclusively for one family.” It should be clear that a dwelling house used as a fraternity house violates a single-family dwelling restriction as a matter of law. The District Court was not erroneous in this finding and this Court should not set that finding aside under Rule 52(a), M.R.Civ.P.
The verified complaint of the neighbors in Clanton Heights Association was filed on March 14, 1980. On the same day, the plaintiff moved for a preliminary injunction, and gave notice to the partnership that a hearing on the motion for a preliminary injunction would be heard before the court on April 14, 1980. The defendants filed their answer to the verified complaint on April 7, 1980. They raised as affirmative defenses: (1) an unconstitutional denial of equal protection of the laws and due process; (2) waiver on the part of the plaintiff to Leona Froney’s use of the premises, through a long-standing acquiescence with knowledge; (3) estoppel by virtue of longstanding acquiescence with knowledge; and, (4) laches. The defendants raised those same objections in a brief filed with the District Court on the date of the hearing, and in the conclusion of the brief, asked the court to deny the plaintiffs their requested relief (which at that time was an application for preliminary injunction) and to dismiss the complaint. After the hearing, the defendant submitted proposed findings of fact and conclusions of law to the district judge. In their proposed conclusions, they asked the court to conclude that the restrictions had to be construed strictly (Proposal 4) that the long acquiescence of the plaintiff in using the premises for other than private one-family residences constituted abandonment and laches (Proposal 5), that plaintiff’s course of acquiescence misled K & S Partnership to expend large sums of money to purchase the property and plaintiff should be estopped (Proposal 6), and that enforcement of the -restriction would constitute a denial of the tenant’s right of equal *189 protection and privacy guaranteed by federal and state constitutions (Proposal 10).
In their brief submitted with their proposed findings and conclucions, the contention was made that “plaintiff is barred either by estoppel or laches or both, from enforcing the deed restriction in question ...”
It is clear that the issues raised by the defendants are precisely the issues upon which the District Court made findings and conclusions in granting the injunction. The District Court had no other course but to rule on them because if these defenses to the issuance of a preliminary injunction were well-grounded, plaintiff is not entitled to a preliminary injunction.
The majority opinion dissolves the preliminary injunction issued by the court upon the ground that ultimate resolution of the issues should await final trial on the merits. The District Court entered specific findings and conclusions in which it affirmatively found that the present use of the triplex is so materially different from past use that the action is not barred by the doctrines of waiver, estoppel, or laches; and that the landowners did not discriminate against a certain class of residents, so that the claim of denial of equal protection is unfounded.” Those were precisely the issues that were presented by the appellants to the district judge at the time of the hearing on the preliminary injunction and on which the district judge had a duty to make a determination both as to fact and as to law, to determine the propriety of issuing the preliminary injunction.
The District Court did not preclude the matter when it issued its preliminary injunction in this case. The district judge contemplated a further hearing on the matter by providing “the defendant appear before the court at a date and time to be set at the convenience of court and counsel to show cause why, if any there be, said injunction should not be made permanent.”
I cannot envision a case where “an applicant who could show that he is entitled to final judgment on the merits still might not be entitled to a preliminary injunction,” unless it may be this case. Such a result will always require an illogical decision.
*190 The majority opinion takes too narrow a view of the power of the District Court in these matters. The District Court has power to issue a preliminary injunction upon a prima facie case being established by the person seeking the injunction. A prima facie case is clearly established here. That the District Court has made decisions which may eventually be the ultimate conclusions in the case is not a valid reason for dissolving the preliminary injunction. It is said by the Idaho court (by way of dictum) in Farm Service, Inc. v. United States Steel Corp. (1966), 90 Idaho 570, 414 P.2d 898, 906-07:
“The rule against granting a preliminary injunction which will have the effect of giving to the party seeking the injunction all the relief sought in the action, does not preclude the granting of such an injunction in a proper case. Rather, it is to be understood as requiring the moving party in such case to show a clear right to the relief sought ...”
The Idaho court has enunciated the rule that ought to apply in this Court. If the plaintiffs here have established a clear right to a preliminary injunction, which they have, the preliminary injunction should not be dissolved upon the ground that the District Court had made ultimate conclusions on defenses raised by the other parties. Otherwise, we make a mockery of the rule that the allowance of a preliminary injunction is vested in the sound legal discretion of the District Court, with the exercise of which the Supreme Court will not interfere except in cases of manifest abuse.

IV. The preliminary injunction was properly issued by the District Court.

What we have said foregoing about the applicable law and facts in this case, and the issues raised by the parties at the time of the preliminary injunction hearing established beyond doubt that plaintiff has shown a prima facie basis for the preliminary injunction, and it should not be dissolved by us.
V. The majority misconstrues the “status quo ” requirement for injunction.
Another reason given by the majority is that the District Court *191 did not preserve the “status quo” in granting the preliminary injunction. The only status quo that the injunction should preserve, if necessary, is the use Leona Froney placed on the real property.
“. . . The status quo to be maintained, however, is not necessarily the state of affairs that exists at the time the suit was filed. In fact, if it were, then few injunctions would be enforceable pending appeal since the vast majority of suits seeking injunctions are filed after the defendant has started to do the disputed acts. Further, if the status quo were limited to the state of affairs at the time of filing, a wrongdoer would be permitted to continue engaging in the disputed conduct until the case was finally resolved, as long as the wrongdoer began to act before the plaintiff filed suit. For this reason, the status quo to be preserved should be the last undisputed state of affairs that existed before the events that gave rise to the pending controversy occurred. This is the rule for granting preliminary injunctions, which are granted even before there has been a trial on the merits ...” State ex rel. McKinley Automotive v. Oldham (1978), 283 Or. 511, 584 P.2d 741, 743.
The majority opinion has not followed the proper rule for preserving the status quo.

VI. Direct evidence of irreparable harm is unnecessary in this type of case.

In an action relating to violations of restrictions which run with the land, it is not necessary that there be direct evidence of damages to the pleading parties. Irreparable harm is presumed. An injunction to enforce a covenant or restriction may issue even absent a showing of the amount of damages caused by the breach. Sandstrom v. Larsen (1978), 59 Haw. 491, 583 P.2d 971, no showing is necessary that the violation has changed the character of the neighborhood. Carter v. Conroy (1976), 25 Ariz.App. 434, 544 P.2d 258. The preliminary injunction, on a prima facie showing, should be granted regardless of relative damage. Gladstone v. Gregory (1979), 95 Nev. 474, 596 P.2d 491. The injunction can issue in the absence of proven damages, Jinkins v. City of Jal (1963), 73 N.M. 173, 386 P.2d 599.
*192 Of course, if irreparable harm is shown in the evidence, then the burden of the plaintiff to make a prima facie case is lessened, because then the court balances the hardships between the parties. (A.J. Industries, Inc. v. Alaska Public Service Com’n (Alaska 1970), 470 P.2d 537, modified on other grounds, 483 P.2d 198.)
In addition to the foregoing diversities with the majority opinion, I also disagree with the decision making the petition signed by other residents of the subdivision admissible in evidence. In my opinion, the petition is not relevant to any issue before the District Court.
The restrictions are binding upon any owner until a majority of all the owners holding fee simple title to the lots in the addition (excluding certain lots) release the same to all land in the subdivision by an executed and acknowledged instrument in writing.
The petition which is offered recites, “we the undersigned residents of Grandview Subdivision, have no objection to the continued use of the premises at 202 Locust as a residence for the members of Kappa Sigma Fraternity.”
There is no foundation to show that the “residents” are owners in fee simple of the property involved, nor is it clear from the language of the petition that the signers understood that they were waiving the restrictions which exist with respect to those properties. Fortunately for all of us, legal rights are not decided by majority vote, even if the petition consisted of the majority of owners which it apparently does not.
In that situation, I feel it has no relevance and should not be admitted.
For the reasons foregoing, I would preserve the injunction in force and remand for a final decision by the District Court. The only difference between my position and that of the majority is that the preliminary injunction is dissolved under the majority opinion, and I would keep it in force. Under both situations, there will be a trial to determine the permanent result here.
*193 My purpose in filing this dissent is to assure the members of the Bar that this Court is not unanimous in the narrow construction of the injunctive powers of the District Court.