**Robert E. Burden and Carlotta I. Burden, Plaintiffs-Appellants, v. Paul V. Lobdell, et al., Defendants-Appellees.**

Gen. No. 67–139.

Second District.

March 28, 1968.

Haye & Keegan, of Rockford, for appellants.

Reno, Zahm, Folgate & Skolrood, of Rockford, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiffs' complaint seeking to remove restrictive covenants established by the plat of a subdivision was stricken on defendants' motion. Plaintiffs elected to stand on the complaint and the suit was dismissed. This appeal is taken from the order of dismissal.

The plaintiffs allege that ". . . they are owners of the Northerly 60 feet of Lot 1 and Lots 2 and 3, and the North 60 feet of Lots 4, 5, 6, 7, 8 and 9 of Glendale Subdivision . . ." referenced to the following plat of subdivision:

Plaintiffs further allege, as material here, that defendants are owners of all of the other lots and portions of lots in said subdivision; that the defendants Paul V. Lobdell and Wentworth Lobdell, as Trustees, were the owners of the land so subdivided, and that part of the plat of the subdivision provided that each lot is and shall be subject to the condition and restriction that "It shall be used for residential purposes only"; that plaintiffs purchased Lots 2 and 3 in 1947 and subsequently acquired their additional property in the subdivision; that following their purchase plaintiffs erected a residence on Lots 2 and 3 which they have occupied as a residence for approximately 20 years, and which they now occupy.

The complaint then alleges:

"6. The eastern boundary of said Glendale Subdivision is a public highway known as North Second Street, and which has been designated as U. S. Highway 51, a highway which runs from the northern boundary of the United States to the southern boundary.

"7. At the time the plaintiffs purchased said Lots 2 and 3 and erected their residence thereon, the general character of the area and neighborhood was

477

# GLENDALE SUBDIVISION

of Part of Lot 20 County Clerk's Plat of a Part of the SW¼ of Section 31 T.45 N R 25 of the 3rd P.M. and of a part of the SE¼ of Section 36 T. 45N R 1 E. of the 3rd P.M.

478

residential and was sparsely populated. At said time, North Second Street was a two-lane highway and vehicular traffic was light.

"8. Since the plaintiffs purchased said Lots 2 and 3 and erected their residence thereon, the general character of the area and neighborhood has materially changed. The area immediately south of said Glendale Subdivision has been incorporated as the City of Loves Park, which now has a population of approximately 12,000. North Second Street has become the major street of the City of Loves Park, and business and commercial establishments occupy both sides of North Second Street for more than one mile south of the plaintiffs' home. A shopping center, containing approximately 20 retail and commercial establishments is now situated on the east side of North Second Street diagonally from the southeast corner of said Glendale Subdivision, and retail and commercial establishments have been and now are being constructed on the east side of North Second Street opposite and north of the plaintiffs' residence. North Second Street has been widened and is now a 4-lane highway, and vehicular traffic is heavy, with approximately 15,000 vehicles passing the plaintiffs' property each day.

"9. Because of the noise of, and because of the noxious and nauseous fumes from, the vehicular traffic on North Second Street, and because of the changed character of the area and neighborhood in which it is located, the plaintiffs' residence has become an undesirable place in which to live, and the value of Lots 2 and 3 and the north 60 feet of Lot 1 of said subdivision for residential purposes has depreciated, but would, if the restrictions above set out were removed, be of greatly increased value.

"10. Said restrictions are, because of the changed character of the area and neighborhood in which

479

said subdivision is located, inequitable, and the plaintiffs have no adequate remedy at law by which such inequity could be remedied."

and prays that the court find and decree that the restrictions set forth above are inequitable and remove the same.

Defendants' motion to dismiss alleges that the complaint is substantially insufficient in law in that it appears from the complaint: that the restrictions were part of a general plan to limit improvements to one-family residences; that there has been unanimous observance of the restrictions by every lot owner in the subdivision, including the plaintiffs; and that no change in the neighborhood of the subdivision is alleged, nor any zoning changes inconsistent with the restrictions.

The motion to dismiss is to be determined by whether the pleader can prove a set of facts under the allegations of the complaint which would entitle him to relief. Only if no set of facts in support of the allegations of the complaint could prove a cause of action is the cause subject to dismissal. Deasey v. City of Chicago, 412 Ill 151, 153, 154, 105 NE2d 725 (1952); Olin Mathieson Chemical Corp. v. J. J. Wuellner & Sons, 72 Ill App 2d 488, 492–493, 218 NE2d 823 (1966); Werner v. International Ass'n of Machinists, 11 Ill App2d 258, 262, 137 NE2d 100 (1956).

The courts of this state have, on numerous occasions proclaimed the general rule that a restrictive covenant will not be enforced if the character of the neighborhood has so changed as to defeat the purpose of the covenant. In stating the rule in the early case of Star Brewery Co. v. Primas, 163 Ill 652, 660, 45 NE 145 (1896), the court notes that in most cases where the doctrine has been applied, two elements exist:

"First, the change in circumstances has resulted from some act or acts of the grantor in the deed or of those

holding under him; second, the enforcement of the covenant will work a serious injury to the property or property rights of the grantee in the deed, or of the party against whom it is sought to enforce the covenant."

The rule was thereafter similarly stated in Ewertsen v. Gerstenberg, 186 Ill 344, 349–350, 57 NE 1000 (1900) as follows:

> "Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction,—or, in short, it may be said that where, from all of the evidence, it appears that it would be against equity to enforce the restriction by injunction relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law."

The latter rule has been more recently confirmed in similar language in Cuneo v. Chicago Title & Trust Co., 337 Ill 589, 595, 169 NE 760 (1929). The same rule is to be found in numerous Illinois cases, including Drexel State Bank of Chicago v. O'Donnell, 344 Ill 173, 180, 176 NE 348 (1931); Henricks v. Bowles, 20 Ill App2d 148, 154, 155 NE2d 664 (1958); Mangini v. Oak Park Trust & Savings Bank, 43 Ill App2d 318, 321, 193 NE2d 479 (1963); Paschen v. Pashkow, 63 Ill App2d 56, 69–70, 211 NE2d 576 (1965). While these cases were decided upon evidence taken, a dismissal of a complaint upon mo-

tion invoked the similar rule in Ockenga v. Alken, 314 Ill App 389, 394, 41 NE2d 548 (1942).

A fair statement of the basis and extent of the principles announced in the various cases which govern a claim of change of conditions sufficient to avoid a restrictive covenant may be found in the comment in 4 ALR2d 1111, 1114:

> ". . . While restrictions in deeds are not favored in law, they will be construed as found, and it is a primary rule that a building restriction will be upheld wherever it remains of substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objections. Consequently, for a change in neighborhood conditions to relieve against enforcement of a restriction and especially to constitute a sufficient ground for cancelation or modification of a restriction, such change must be so radical and complete as to render the restriction unreasonable, confiscatory, and discriminatory, or as practically to destroy the purpose for which the restriction was originally imposed, relief from an onerous building restriction because of a change in the character of the neighborhood being granted only if it can be done without causing damage to others who have purchased their property in the restricted area in reliance on the restriction. . . ."

Applying these principles to the complaint in this case, we agree with the trial court that the complaint is substantially insufficient in law.

It is clear from the complaint that not even a single violation of the restrictive covenant has occurred in the subdivision which might be said to be a basis for an estoppel against the defendants who are defending the restriction. It is obvious that the general purpose of creating a residential subdivision has been accomplished.

Even the plaintiffs still occupy their residence in the subdivision.

The allegations that the surrounding area has grown in population, that bordering highways have been widened, developed with business and commercial establishments, including a shopping center, and carry more traffic, do not show a change in the character of the neighborhood to an extent which would make the enforcement of the restrictions in Glendale Subdivision serve no useful purpose. Route 51 bordering plaintiffs' property was in existence as a main artery at the time the restrictions were placed on the subdivision and at the time plaintiffs acquired their property. The conditions alleged could, by reasonable inference, well have been contemplated at the time the restrictions were placed on the subdivision.

■ The complaint clearly shows that the residential character of the subdivision remains intact. There is no allegation that the remaining lots in the subdivision have depreciated in value. It appears patently inequitable from the complaint to obviously reduce the value and enjoyment of the defendants' property to their damage by granting plaintiffs the right to use their properties in a manner not consonant with the plan of the purely residential subdivision shown by the plat and the plat restrictions.

We find that no facts could be adduced in support of the allegations and prayer of the complaint which would not result in unjustly injuring the defendants. In equity the complaint does not make out a case for the removal of the residential restrictions and was properly dismissed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.