No. 23390.

West Alameda Heights Homeowners Association, H. W. Nichols, Norman Jensen, Mrs. Mazie Johnson, Mrs. Christine Hupp, Dorothy R. Baker, and Maria Dunlap v. The Board of County Commissioners of the County of Jefferson, State of Colorado; George O. Newton, Carma S. Newton, Bernice Newton, F. W. Woolworth Company, Safeway Stores, Inc., and Bankers Life Insurance Company.

(458 P.2d 253)

Decided August 25, 1969.    Rehearing denied September 22, 1969.

CALKINS, KRAMER, GRIMSHAW & CARPENTER, THOMAS T. GRIMSHAW, ROBERT W. COOK, for plaintiffs in error.

WINNNER, BERGE, MARTIN AND CAMFIELD, WILLIAM G. BERGE, for defendants in error Newton.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE West Alameda Heights Homeowners Association and certain individual homeowners, representatives in a class action for persons who reside in West Alameda Heights Subdivision, are here assigning error to the decree of the Jefferson County district court, declaring null and void restrictive covenants on a number of lots in certain blocks in the subdivision.

As plaintiffs below they brought an action to enjoin the construction of two large shopping facilities on the subject property by the F. W. Woolworth Company and Safeway Stores, Inc. to be financed by Bankers Life Insurance Company. The three Newtons are made defendants as owners of the property. George Newton was the original developer of the subdivision who in 1947 filed the plat and created the covenants contained therein. The subdivision is bounded on the north by West First Avenue; on the east by Wadsworth Boulevard; on the south by West Alameda; and on the west by Cody Street. Outside of the subdivision, particularly to the east and to the southeast, there has been extensive commercial development, and both Wadsworth Boulevard and West Alameda are major four-lane highways.

The plat contains protective covenants restricting the use of the lands in the subdivision. Each covenant provides that, except as noted, all lots shall be Residential 1.

The significance in our determination is the fact that the subdivision is large and almost fully developed as planned, consisting primarily of single family residences. There are over 350 lots comprising the tract. Only 80 to 85 of these have not been developed. The only commercial uses presently situated in the subdivision are a service station and a garden center located on land originally reserved for commercial use in the plat. Apartments have been constructed on other land set aside for commercial purposes. The major portion of three blocks — numbers 13, 14 and 15 — proposed to be used for the shopping facilities was platted as residential property and restricted to such use by the convenants which have never been amended. The original covenants provide that they would be in force until June 30, 1965 and automatically extended for successive ten-year periods unless the owners of a majority of the lots by vote change the covenants in whole or in part. There has been no attempt to amend or change them, no election has been called or held, and the present extension of the covenants does not expire until June 30, 1975.

The factor which precipitated this action was an application by George Newton to re-zone a portion of the blocks retained by him to permit the building of a Safeway Store and a Woolco Department Store. This property still owned by George Newton fronts on West Alameda and extends northward approximately 600 feet to an area zoned for single family homes. It was planned to erect a buffer consisting of a masonry wall not less than five feet nor more than six feet in height between the commercial enterprises and the residential property to the north.

The writ of error here involves only plaintiffs' fourth claim for relief which relates to the restrictive covenants. In this claim the plaintiffs, after setting out the existence and nature of the covenants, aver that the purchasers of the lots in the subdivision relied on restrictive and protective covenants which were designed for the protection

of the neighborhood and of the property; and that the restrictions are applicable not only to the property in the development which has been sold but also to the property retained by the defendant George Newton for future sales. They allege they have invested large sums of money in lots and homes in the subdivision in reliance on the covenant.

In entering judgment against the homeowners on this claim, the trial court made the following findings, *inter alia:*

"10. The character of this neighborhood has changed considerably since the West Alameda Heights was created. The subject land borders on West Alameda Avenue, a short distance from the intersection of Wadsworth Avenue. At the time of the imposition of the covenants, Alameda was mainly a residential avenue. Now it is a heavily traveled thoroughfare and the area is developing as a commercial area. Villa Italia Shopping Center is at the intersection of Alameda and Wadsworth.

"11. The subject land is not suitable for residential use and is suitable only for commercial use. Plaintiffs will suffer no damage by commercial use. To deprive the defendants Newton of the right to use the property would not be equitable and if the restrictive covenants are enforced, they would be deprived of the right to use their property. The enforcement of the restrictive covenants would impose an oppressive burden on defendants Newton without any substantial benefit."

The court declared the restrictive covenants to be null and void as to the subject property.

QUESTION TO BE DETERMINED:
*DO THE FACTS OF THIS CASE AND THE LAW APPLICABLE THERETO JUSTIFY THE TRIAL COURT IN RULING THAT THE COVENANTS RESTRICTING TO RESIDENTIAL USE BLOCKS 13, 14 and 15 NO LONGER APPLY?*

We answer the question in the negative and hold that the covenants are valid and enforceable.

■ The pertinent rule of law applicable to this case is most recently set out in *Zavislak v. Shipman,* 147 Colo. 184, 362 P.2d 1053, wherein this court adopted the language of *McArthur v. Hood Rubber Co.,* 221 Mass. 372, 109 N.E. 162, as follows:

"* * * When the purpose for which the restriction was imposed has come to an end, and where the use of the tract of land for whose benefit it was established has so utterly changed that no party to the bill could be heard to enforce it in equity or would suffer any damage by its violation, * * * a proper case is made out for equitable relief. * * *"

Parties plaintiffs and defendants all rely on our pronouncement in *Zavislak.* The court, in striking down the covenants, attempted to apply the same rule of law. We hold, however, that the court misconceived and misapplied the rule to changes and developments outside of and beyond the subdivision itself. This is made evident by the court's reference to the changed traffic patterns on Wadsworth and Alameda and the development of Villa Italia Shopping Center and other developments east of the Alameda and Wadsworth intersection.

■ The true test here, however, as to whether the purpose of the restrictions has come to an end, is the development of the subdivision which is the subject of the covenants subsequent to their creation. Thus the courts look to whether the original purposes of insuring maintenance of residential character for the subdivision has been abandoned or changed by acquiescence or passiveness of the subdivision residents.

Newton, in planning the property with the restrictions which he imposed, intended to insure the maintenance of the residential character for the subdivision. That purpose has continued to the present time, and the effect of it is demonstrated by what has happened to land outside of its perimeter over which the West Alameda Heights residents had no control. It is undisputed that in the subdivision wherein the covenants did control no

change of the use contemplated when the plat was filed has occurred. Only the property originally platted for use of commercial enterprises thereon has been occupied as such.

Another test announced in the *Zavislak* case is whether the parties would suffer any damage by the removal of the covenant. Touching on this phase the testimony of the individual plaintiffs was that their property would be subject to substantial decrease in value. One of plaintiffs' witnesses — a professional land planner — depicted the foreseeable increase in traffic to and from the proposed shopping facility with concomitant increase in noise, fumes, and hazard to children. The Traffic and Safety Engineer for Jefferson County stated that although he probably could control increased traffic through the residential area by the use of traffic signals and one-way streets, he candidly admitted that such a traffic pattern would inconvenience the homeowners as much as it might deter shoppers from driving through the area. There was testimony as to the present pleasant aspects of the neighborhood, undisturbed by the commercial activity beyond the borders.

■ Contrariwise, the defendants did not prove that the purpose of the protective covenants had come to an end; that the land use within the tract had changed from what it was intended to be at the time the plat was filed; and that no person would suffer any damage by its violation. The evidence therefore is contrary to the court's finding that plaintiffs will suffer no damage from commercial use of the subject property.

■ Cases are numerous from other jurisdictions wherein covenants have been sought to be removed because subject lands would be more valuable for commercial than for residential purposes, and wherein there were conditions such as the presence of commercial uses nearby, heavy street traffic on the perimeter of the tract, and some commercial property within a primarily residential subdivision. But the weight of authority sup-

ports the view that *changes outside* of the tract will not warrant the lifting of restrictive covenants affecting property *within the subdivision if the covenants are still* a benefit to the owners of the property under the restrictions. *Robertson v. Nichols,* 92 Cal. App.2d 201, 206 P.2d 898; *Batman v. Creighton,* 101 So.2d 587 (Fla. App.); *Cawthon v. Anderson,* 211 Ga. 77, 84 S.E.2d 66; *Redfern Lawns Civic Ass'n, et al. v. Currie Pontiac Co.,* 328 Mich. 463, 44 N.W.2d 8; *Weinstein v. Swartz,* 3 N.J. 80, 68 A.2d 865; *Chuba v. Glasgow,* 61 N.M. 302, 299 P.2d 774; *Frey v. Poynor,* 369 P.2d 168 (Okla.); *Pitts v. Brown,* 215 S.C. 122, 54 S.E.2d 538; *Bullock v. Steinmil Realty, Inc.,* 1 Misc.2d 46, 145 N.Y.S.2d 331, *aff'd* 3 App. Div. 2d 806, 161 N.Y.S.2d 602.

■ Normal growth and change and the possibility of encroachment of commercial uses, we can infer, were contemplated when the covenants and the master plan of development were created by the original owner and platter. There would be no need for the covenants to protect the subdivisions from inroads of commercial expansion if it were not expected that such might take place. As long as the original purpose of the covenants can still be accomplished and substantial benefit will inure to the restricted area by their enforcement, the covenants stand even though the subject property has a greater value if used for other purposes. *See* 4 A.L.R. 2d 1111.

A comment in *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, appeals to us:

"The reasoning of the courts is that if because of changed conditions outside the restricted area one lot or tract were permitted to drop from under the protective cover of residential-only restrictions, the owner of the adjoining lot would then have an equal claim on the conscience of the court, and, in due course, all other lots would fall like ten-pins, thus circumventing and nullifying the restriction and destroying the essentially *residential* character of the entire area."

In the case of protective covenants, it has sometimes been held that changes within the affected area may result in modification or removal of the covenant because the changes were within the control of those entitled to enforce the covenant. In other words, the doctrines of abandonment, estoppel and waiver are applicable. *See Thodos v. Shirk,* 248 Iowa 172, 79 N.W.2d 733; *Mechling v. Dawson,* 234 Ky. 318, 28 S.W.2d 18; *Greer v. Bornstein,* 246 Ky. 286, 54 S.W.2d 927; *Tull v. Doctors Bldg. Inc.,* 255 N.C. 23, 120 S.E.2d 817. However, as to changes in conditions occurring outside the area restricted, the parties affected have no control whatever, and the doctrines of waiver, abandonment and estoppel are not applicable. Here, the problem presents itself as to whether the outside conditions affect the entire subdivision in a way that the restrictive purposes of the protective covenants would be defeated. As stated in *Thodos v. Shirk, supra:*

"In both cases the factual situation largely governs as to whether or not equity will refuse to enforce the restrictions for the reason that by so doing the result would be oppressive and inequitable without any appreciable value to other property in the restricted area. It has been said that in order for this equitable defense of change of conditions to arise, there must be a change in the character of the surrounding neighborhood sufficient to make it impossible any longer to secure in substantial degree the benefits sought to be realized through the performance of the building restriction."

The construction of Villa Italia Shopping Center and of other commercial properties outside of West Alameda Heights, but in close proximity to it, have not changed the residential character of the subdivision. If the changed conditions outside the tract have made the particular property held by the owner since the original platting less desirable for residential use than it previously was, this is not to say that the whole tract has been made unfit for residential use. On the contrary, the

500

evidence shows that the subdivision is a residential area of high quality, with expensive homes and quiet streets. The construction of commercial facilities nearby are all the more reason why the covenants for West Alameda Heights must be strictly enforced. The covenants have no meaning if external forces and pressures result in their removal.

The judgment is reversed and the cause remanded to the trial court with directions to enter a permanent injunction as prayed for in the complaint.

MR. JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.