WESTERN LAND CO., LTD., APPELLANT, v. LEONARD TRUSKOLASKI, ET AL., RESPONDENTS.

No. 6562

March 31, 1972                    495 P.2d 624

*Vargas, Bartlett and Dixon,* and *Jon J. Key,* of Reno, for Appellant.

*Breen, Young, Whitehead and Hoy,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

The respondents, homeowners in the Southland Heights Subdivision in southwest Reno, Nevada, brought an action in the district court to enjoin the appellant from constructing a shopping center on a 3.5-acre parcel of land located within the subdivision at the northeast corner of Plumas and West Plumb Lane. In 1941 the appellant subdivided this 40-acre development, and at that time it subjected the lots to certain restrictive covenants which specifically restricted the entire 40 acres of the subdivision to single family dwellings and further prohibited any stores, butcher shops, grocery or mercantile business of any kind.[1] The district court held these restrictive covenants to be enforceable, and enjoined the appellant from constructing a supermarket or using the 3.5 acres in any manner other than

---

[1] The agreement as to building restrictions for the Southland Heights Subdivision, signed and filed for record by the Western Land Co., Ltd., provides in pertinent part as follows:

"WHEREAS, the said Western Land Co. Ltd. desires to subject said lots to the conditions and restrictions hereinafter set forth for the benefit of said lots and of the present and subsequent owners thereof.

"NOW, THEREFORE, the Western Land Co. Ltd., for the benefits and considerations herein set forth accrued and accruing to it, does covenant and agree that said lots, pieces, and parcels of land shall be held or conveyed subject to the following conditions and restrictions, to-wit:

"1.　No structures shall be erected, altered, placed or permitted to remain on any of said lots or parcels of ground other than one single family dwelling. . . .

". . . .

"4.　No store, butcher shop, grocery or mercantile business of any

that permitted by the covenants. The appellant contends that the district court erred in enforcing these covenants because the subdivision had so radically changed in recent years as to nullify their purpose. We agree with the holding of the district court that the restrictive covenants remain of substantial value to the homeowners in the subdivision, and that the changes that have occurred since 1941 are not so great as to make it inequitable or oppressive to restrict the property to single-family residential use.

In 1941 the Southland Heights subdivision was outside of the Reno city limits. The property surrounding the subdivision was primarily used for residential and agricultural purposes, with very little commercial development of any type in the immediate area. At that time Plumb Lane extended only as far east as Arlington Avenue.

By the time the respondents sought equitable relief in an effort to enforce the restrictive covenants, the area had markedly changed. In 1941 the city of Reno had a population of slightly more than 20,000; that figure had jumped to approximately 95,100 by 1969. One of the significant changes, as the appellant aptly illustrates, is the increase in traffic in the surrounding area. Plumb Lane had been extended to Virginia Street, and in 1961 the city of Reno condemned 1.04 acres of land on the edge of the subdivision to allow for the widening of Plumb Lane into a four-lane arterial boulevard. A city planner, testifying for the appellant, stated that Plumb Lane was designed to be and now is the major east-west artery through the southern portion of the city. A person who owns property across Plumas from the subdivision testified that the corner of Plumb Lane and Plumas is "terribly noisy from 5:00 p. m. until midnight." One of the findings of the trial court was that traffic on Plumb Lane had greatly increased in recent years.

---

kind shall be maintained, carried on, or conducted upon any of said lots or parcels. . . .

"  . . . .

"10.   These covenants are to run with the land and shall be binding upon all the parties and all persons claiming under them until January 1st, 1966, at which time said covenants shall be automatically extended for successive periods of ten years unless by a vote of the majority of the then owners of the lots it is agreed to change the said covenants in whole or in part;  . . .  and whether or not it be so expressed in the deeds or other conveyances of said lots, the same shall be absolutely subject to the covenants, conditions, and restrictions which run with and are appurtenant to said lots or every part thereof as herein expressed as fully as if expressly contained in proper and obligatory covenants and conditions in each and every deed, contract, and conveyance of or concerning any part of the said land or the improvements to be made thereon."

Another significant change that had occurred since 1941 was the increase in commercial development in the vicinity of the subdivision. On the east side of Lakeside Drive, across from the subdivision property, is a restaurant and the Lakeside Plaza Shopping Center. A supermarket, hardware store, drug store, flower shop, beauty shop and a dress shop are located in this shopping center. Still further east of the subdivision, on Virginia Street, is the Continental Lodge, and across Virginia Street is the Park Lane Shopping Center.

Even though traffic has increased and commercial development has occurred in the vicinity of the subdivision, the owners of land within Southland Heights testified to the desirability of the subdivision for residential purposes. The traffic density within the subdivision is low, resulting in a safe environment for the children who live and play in the area. Homes in Southland Heights are well cared for and attractively landscaped.

The trial court found that substantial changes in traffic patterns and commercial activity had occurred since 1941 in the vicinity of the subdivision. Although it was shown that commercial activity outside of the subdivision had increased considerably since 1941, the appellant failed to show that the area in question is now unsuitable for residential purposes.

Even though nearby avenues may become heavily traveled thoroughfares, restrictive covenants are still enforceable if the single-family residential character of the neighborhood has not been adversely affected, and the purpose of the restrictions has not been thwarted. Burden v. Lobdell, 235 N.E.2d 660 (Ill. App. 1968); Gonzales v. Gackle Drilling Company, 353 P.2d 353 (N.M. 1960); Continental Oil Co. v. Fennemore, 299 P. 132 (Ariz. 1931). Although commercialization has increased in the vicinity of the subdivision, such activity has not rendered the restrictive covenants unenforceable because they are still of real and substantial value to those homeowners living within the subdivision. West Alameda Heights H. Ass'n. v. Board of Co. Com'm., 458 P.2d 253 (Colo. 1969); Burden v. Lobdell, supra; Hogue v. Dreeszen, 73 N.W.2d 159 (Neb. 1955).

The appellant asks this court to reverse the judgment of the district court and declare as a matter of law that the objects and purposes for which the restrictive covenants were originally imposed have been thwarted, and that it is now inequitable to enforce such restrictions against the entity that originally created them. This we will not do. The record will not permit us to find as a matter of law that there has been such a change

in the subdivision or for that matter in the area to relieve the appellant's property of the burden placed upon it by the covenants. There is sufficient evidence to sustain the findings of the trial court that the objects and purposes of the restrictions have not been thwarted, and that they remain of substantial value to the homeowners in the subdivision.

The case of Hirsch v. Hancock, 343 P.2d 959 (Cal.App. 1959) as well as the other authorities relied upon by the appellant [Key v. McCabe, 356 P.2d 169 (Cal. 1960); Strong v. Hancock, 258 P. 60 (Cal. 1927); Downs v. Kroeger, 254 P. 1101 (Cal. 1927)] are inapposite for in those cases the trial court found many changes within as well as outside the subdivision and concluded from the evidence that the properties were entirely unsuitable and undesirable for residential use and that they had no suitable economic use except for business or commercial purposes, and the appellate courts in reviewing those cases held that the evidence supported the findings and sustained the judgments of the trial courts.

On the other hand, in the case of West Alameda Heights H. Ass'n. v. Board of Co. Com'm., supra, upon facts similar to those found in this case, the trial court decided that the changed conditions in the neighborhood were such as to render the restrictive covenants void and unenforceable. The appellate court reversed and held that the trial court misconceived and misapplied the rule as to change of conditions and said, 458 P.2d at 256: "As long as the original purpose of the covenants can still be accomplished and substantial benefit will inure to the restricted area by their enforcement, the covenants stand even though the subject property has a greater value if used for other purposes." See also Rombauer v. Compton Heights Christian Church, 40 S.W.2d 545 (Mo. 1931); Porter v. Johnson, 115 S.W.2d 529 (Mo.App. 1938); Finley v. Batsel, 353 P.2d 350 (N.M. 1960); Southwest Petroleum Co. v. Logan, 71 P.2d 759 (Okla. 1937); Burden v. Lobdell, supra.

There is substantial evidence in the record to support the trial court's findings of fact and conclusions of law that the covenants were of real and substantial value to the residents of the subdivision. Where the evidence is conflicting and the credibility of the witnesses is in issue, the judgment will not be disturbed on appeal if the evidence is substantially in support of the judgment of the lower court. Bangston v. Brown, 86 Nev. 653, 473 P.2d 829 (1970); Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970); Havas v. Alger, 85 Nev.

627, 461 P.2d 857 (1969). Here the appellant has not carried its burden of showing that the subdivision is not now suitable for residential purposes because of changed conditions.

In another attempt to show that the restrictive covenants have outlived their usefulness, the appellant points to actions of the Reno city council. On August 1, 1968, the council adopted a Resolution of Intent to reclassify this 3.5-acre parcel from R–1 [residential] to C–1(b) [commercial]. The council never did change the zoning, but the appellant contends that since the council did indicate its willingness to rezone, it was of the opinion that the property was more suitable for commercial than residential use. This argument of the appellant is not persuasive. A zoning ordinance cannot override privately-placed restrictions, and a trial court cannot be compelled to invalidate restrictive covenants merely because of a zoning change. Rice v. Heggy, 322 P.2d 53 (Cal.App. 1958).

Another of the appellant's arguments regarding changed conditions involves the value of the property for residential as compared to commercial purposes. A professional planning consultant, testifying for the appellant, stated that the land in question is no longer suitable for use as a single-family residential area. From this testimony the appellant concludes that the highest and best use for the land is non-residential. Even if this property is more valuable for commercial than residential purposes, this fact does not entitle the appellant to be relieved of the restrictions it created, since substantial benefit inures to the restricted area by their enforcement. West Alameda Heights H. Ass'n. v. Board of Co. Com'm., supra; Cawthon v. Anderson, 84 S.E.2d 66 (Ga. 1954).

In addition to the alleged changed circumstances, the appellant contends that the restrictive covenants are no longer enforceable because they have been abandoned or waived due to violations by homeowners in the area. Paragraph 3 of the restrictive agreement provides that no residential structure shall be placed on a lot comprising less than 6,000 square feet. Both lot 24 and lot 25 of block E contain less than 6,000 square feet and each has a house located on it. This could hardly be deemed a violation of the restrictions imposed by the appellant inasmuch as it was the appellant that subdivided the land and caused these lots to be smaller than 6,000 feet. Paragraph 7 of the agreement provides that a committee shall approve any structure which is moved onto the subdivision, or

if there is no committee, that the structure shall conform to and be in harmony with existing structures. The appellant did show that two houses were moved on to lots within the subdivision, but the appellant failed to show whether a committee existed and if so approved or disapproved, or whether the houses failed to conform or were out of harmony with the existing structures. Finally, in an effort to prove abandonment and waiver, the appellant showed that one house within the subdivision was used as a painting contractor's office for several years in the late 1940's, and that more recently the same house had been used as a nursery for a baby sitting business. However, the same witnesses testified that at the time of the hearing this house was being used as a single-family residence.

Even if the alleged occurrences and irregularities could be construed to be violations of the restrictive covenants they were too distant and sporadic to constitute general consent by the property owners in the subdivision and they were not sufficient to constitute an abandonment or waiver. In order for community violations to constitute an abandonment, they must be so general as to frustrate the original purpose of the agreement. Thodos v. Shirk, 79 N.W.2d 733 (Iowa 1956).

Affirmed.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDER-SON, JJ., concur.