FRIEDWARDT WINTERBERG, Appellant, *v.* THE UNI-
VERSITY OF NEVADA SYSTEM, THE BOARD OF
REGENTS OF UNIVERSITY OF NEVADA SYSTEM;
FRED M. ANDERSON, JAMES H. BILBRAY, PROC-
TER HUG, Jr., HAROLD JACOBSEN, MOLLY
KNUDTSEN, PAUL McDERMOTT, WILLIAM MOR-
RIS, MEL STENINGER, HELEN THOMPSON,
ARCHIE C. GRANT, LOUIS LOMBARDI, in Their
Capacity as Members of Said Board of Regents;
NEIL D. HUMPHREY, in His Capacity as Chancel-
lor of the University of Nevada System; ROMAN
J. ZORN, in His Capacity as President of University
of Nevada at Las Vegas; N. EDD MILLER, in His
Capacity as President of University of Nevada at
Reno; CHARLES R. DONNELLY, in His Capacity
as Director of the COMMUNITY COLLEGE DIVI-
SION in Nevada; JOHN M. WARD, in His Capacity
as Director of the DESERT RESEARCH INSTI-
TUTE, Respondents.

No. 7126

September 10, 1973 513 P.2d 1248

*Hilbrecht, Jones & Schreck,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; and *Thomas
G. Bell,* Special Deputy Attorney General, Las Vegas, for
Respondents.

**OPINION**

By the Court, MOWBRAY, J.:

On June 30, 1971, appellant, Friedwardt Winterberg, filed a complaint for declaratory and injunctive relief against respondents, hereinafter referred to as the University of Nevada System or the System, requesting that the court declare that Winterberg be recognized as having permanent tenure in the entire University of Nevada System as a whole and not merely within one division. Winterberg further sought a temporary restraining order, a preliminary injunction, and a permanent injunction to permanently restrain and enjoin the University of Nevada from terminating him as a university professor. A temporary restraining order was issued, and subsequently a preliminary injunction was granted.

At the hearing on the permanent injunction, the district court held that Winterberg was tenured in only one division of the University of Nevada System, the Desert Research Institute. Winterberg now appeals, contending that the trial court committed reversible error in limiting his tenure solely

and exclusively to the Desert Research Institute. We do not agree, and we affirm the ruling of the district court.[1]

1. *The Facts.*

On June 1, 1963, Winterberg received a joint appointment as associate professor of atmospheric physics to the college of arts and sciences and to the Desert Research Institute ("DRI"). On February 12, 1966, appellant was granted tenure in DRI by the board of regents.[2]

The University of Nevada System was established by the board of regents on February 10, 1968, and was recognized by the 1969 Legislature by enactment of chapter 666, Statutes of Nevada 1969, which became effective July 1, 1969. One result of the reorganization was to establish four divisions of the System, namely, the University of Nevada, Reno; the University of Nevada, Las Vegas; Desert Research Institute; and the Community College Division. All faculty are now employed in one of these four divisions, the chancellor's office, the computing center, or the University Press.

On March 13, 1971, the board of regents, pursuant to the reorganization of the System, passed a motion that any person who was granted tenure prior to February 10, 1968, would be recognized as holding tenure in the division in which he held appointment at the time tenure was granted.[3] Earlier in

---

[1]The University of Nevada System filed a cross-appeal, which was dismissed without objection.

[2]The minutes of the February 12, 1966, meeting of the board of regents of the University of Nevada relating to Winterberg's grant of tenure read as follows, at 182–183:

"(2) *Recommendations for Tenure*

"MOTION by Mr. Hug, seconded by Mr. Jacobsen, carried without dissenting vote that the Committee recommended to the Board the approval of the granting of tenure, effective July 1, 1966, to the following:

"*Desert Research Institute*

 "Friedwart [sic] Winterberg, Associate Professor

". . .

"ACTION OF THE BOARD:

"MOTION by Mr. Jacobsen, seconded by Mr. Ronzone, carried unanimously that the action of the Committee become the action of the Board."

[3]The motion passed by the board of regents is reflected in the minutes of the March 13, 1971, meeting as follows, at 89:

"33. *Rights of Faculty Granted Tenure Prior to Establishment of the University of Nevada System* . . .

"Mr. Hug MOVED that faculty who were granted tenure prior to February 10, 1968, shall be recognized as holding tenure in the division in which he held appointment at the time tenure was granted. Motion seconded by Mr. Bilbray, carried without dissent."

that meeting the board of regents tabled a resolution that would have granted Systemwide tenure to any professor who had received tenure in a particular division prior to the reorganization of the System.[4]

Respondents subsequently proceeded to terminate Winterberg's tenure and employment in the DRI by claiming the existence of a financial exigency. It was in response to the pending termination that this litigation commenced.

2. *The Concept of Tenure.*

 █

There is little question that tenure when acquired by a faculty member is a valuable right and an important part of the university systems throughout the United States. See State ex rel. Saxtorph v. District Court, 275 P.2d 209 (Mont. 1954); Holbrook v. Board of Educ., 231 P.2d 853 (Cal. 1951); Titus v. Lawndale School Dist., 322 P.2d 56 (Cal.App. 1958). The term "tenure" evolved from the mode or system of holding lands or tenements in subordination to some superior, which in the feudal ages was a leading characteristic of real property. In its general sense, it is a mode of holding or occupying, and we speak of the tenure of an office meaning the manner in

[4]The tabled resolution read as follows:

"WHEREAS, the Board of Regents did, on February 10, 1968, reorganize the University of Nevada as the University of Nevada System; and

"WHEREAS, the Nevada State Legislature recognized that reorganization by enactment of Chapter 666, Statutes of Nevada 1969; and

"WHEREAS, faculty granted tenure prior to reorganization are recognized by the Board of Regents as having rights in the 'University Faculty' which are considered different than [sic] the tenure rights of faculty granted tenure after reorganization;

"NOW, THEREFORE, BE IT RESOLVED that the Board of Regents directs that any faculty member with tenure granted prior to February 10, 1968 shall be recognized as having tenure in the 'University Faculty' as well as tenure in a division of the University of Nevada System.

"AND BE IT FURTHER RESOLVED, that the Board of Regents directs that if such a faculty member is notified of pending termination under the provisions of Chapter IV, Section 1.6, i.e. for financial exigency, he shall be entitled to a hearing by a five member ad hoc committee on appeals appointed by the Chancellor from the faculties of the four divisions and the non-division faculty (i.e. Chancellor's Office, Computing Center and the University Press); such committee shall, in conformity with the spirit of Chapter IV, Section 1.5 of the *University Code,* submit its report and recommendations to the Board of Regents for its review and final decision." Board of Regents Univ. of Nev. Systems Minutes of Meeting Mar. 13, 1971, at 81.

which it is held, especially with regard to time. Black's Law Dictionary 1639 (4th ed. 1951).[5]

In the University of Nevada System, the regulations regarding tenure are contained in chapter IV of the University Code, which has the effect of law in the State of Nevada. See State ex rel. Richardson v. Board of Regents, 70 Nev. 144, 261 P.2d 515 (1953). While the term "tenure" is not specifically defined in the Code, its meaning can be inferred from chapter IV, which provides in pertinent part:

"*SECTION 1—Tenure*

". . . Full-time faculty members required to serve a probationary period will, at the expiration of such probationary period, have permanent tenure, and their services will be terminated only for adequate cause, except in the case of retirement for age, financial exigencies, or extraordinary circumstances (such as a state of [sic] national emergency or prolonged disability). In the interpretation of this principle of tenure, the following academic practices are operative:

". . .

"1.6 If a permanent appointment [that of a tenured professor] is terminated because of financial exigency, the released faculty member's place will not be filled by a new appointee within a period of two years, unless the released faculty member has been offered, and has declined, the reappointment. If a permanent appointment is terminated because a special subject has been dropped, or a curriculum or course reorganized, the faculty member concerned will be continued on the faculty in some other capacity, if possible. . . . Termination of a permanent appointment because of financial exigency will be demonstrably bona fide.

". . .

"1.8 Tenure in academic departments is a privilege reserved only for professional staff members who have earned the right to tenure by virtue of experience in teaching or research. . . ." University of Nevada System, Univ. Code ch. IV, § 1 (Faculty POLICY Bull. # 68–3, July 1968).

Under the University Code, then, the object of Winterberg's attempt to establish his rights to Systemwide tenure is to compel a transfer to a comparable position within the System in the event financial exigency terminates his position at DRI.

3. *DRI as a Division of the University of Nevada System.*

---

[5]For an interesting discussion of academic tenure, see Van Alstyne, *Tenure: A Summary, Explanation, and "Defense"*, American Association of University Professors, 77 Bull. 328 (1971).

Winterberg bases his claim to Systemwide tenure upon the assertion that the DRI was not a separate division of the University of Nevada but was part of the University of Nevada, Reno, at the time he received his tenure in 1966. We do not agree.

In 1963, the DRI was established by NRS 396.795, which provides:

"To contribute more effectively to the security of the nation and to promote the general welfare of the State of Nevada and its citizens through the development of educational and scientific research, the board of regents of the University of Nevada is authorized to establish an educational and scientific research division of the university, to be known as the desert research institute."

Moreover, the personnel policy and procedure for the DRI are separate and distinct from normal University policies.[6] Finally, the contract under which Winterberg held his position during the time he received his tenure shows that he was appointed solely as a member of the DRI staff.

Appellant puts great emphasis upon a letter from President Armstrong, notifying him that he had been given tenure as a member of the "University Faculty". The term "University Faculty" at that time included all persons holding professional positions and included those who were not tenured. Even if the term "University Faculty" could be construed as having special meaning, the board of regents alone is the body which must make final approval of tenure, and President Armstrong had no authority to grant Systemwide tenure on his own. University Code, ch. II, § 2.8 (Faculty POLICY Bull. # 68–3, July 1968).

4. *Joint Appointment.*

Winterberg further asserts that he is entitled to Systemwide tenure on the ground that he held a joint appointment as associate professor of atmospheric physics to the college of arts and sciences and the DRI. Although Winterberg may have had

---

[6]NRS 396.7953 provides in pertinent part:

"1. The board of regents may devise and establish personnel policies and procedures in connection with the operation of contractual or sponsored research activities [sic] of the institute, separate and apart from those personnel policies and procedures established for the professional personnel of other colleges and divisions of the university."

a joint appointment as his initial position, the record clearly shows that when he was granted tenure in 1966 he did not possess such joint appointment. Appellant's employment contract for the 2 years immediately prior to his obtaining tenure lists his appointment as "Desert Research Institute Associate Professor." In addition, the record of his teaching at the University of Nevada, Reno, shows that at no time did he ever teach more than one course per term. Thus, even if Winterberg were considered to have a joint appointment, his status as a part-time teacher does not entitle him to a tenured position.[7]

A fair reading of the record demonstrates that there is substantial evidence to support the decision of the trial court that Winterberg did not receive Systemwide tenure, but only that within the division of the DRI. Where there is substantial evidence to support the lower court's decision, we will not disturb it on appeal. Perry v. Law Enforcement Electronics, Inc., 88 Nev. 180, 495 P.2d 355 (1972); Western Land Co. v. Truskolaski, 88 Nev. 200, 495 P.2d 624 (1972). Accordingly, the judgment of the lower court is affirmed.

THOMPSON, C. J., and BATJER and ZENOFF, JJ., concur.

GUNDERSON, J., concurring:
I concur in the result.

---

[7]The University Code in effect at the time provided in pertinent part:
"The foregoing principles and regulations governing tenure apply only to full-time regular employees of the University holding rank of Instructor, Assistant Professor, Associate Professor, Professor, or equivalent ranks in effect at this University. They do not apply to special faculty appointments, which include Visiting Professor, Lecturer, Instructional Assistant, and all term, part-term, or temporary appointments. All special faculty appointments are governed by the terms of the individual contracts." University Code, University of Nevada Regulations on Tenure and Academic Freedom, § I.A. 7 (Faculty Policy Bull. 64–8 at 34, Sept. 4, 1964).