# IN THE SUPREME COURT OF THE STATE OF NEVADA

C & A INVESTMENTS, L.L.C.,
Appellant,
vs.
JIANGSON DUKE, LLC; BANK OF
UTAH, NOT INDIVIDUALLY, BUT
SOLELY AS REMAINDERMAN
TRUSTEE UNDER REMAINDERMAN
TRUST AGREEMENT (1995-2), DATED
AS OF JUNE 13, 1995, AS SUCCESSOR
TRUSTEE TO WELLS FARGO TRUST
COMPANY, N.A. (FORMERLY KNOWN
AS WELLS FARGO BANK NORTHWEST,
N.A., FORMERLY KNOWN AS FIRST
SECURITY BANK OF UTAH, N.A.); AND
NORTHERN NEVADA COMSTOCK
INVESTMENTS, LLC,
Respondents.

No. 79881

FILED

OCT 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

C & A INVESTMENTS, L.L.C.,
Appellant/Cross-Respondent,
vs.
JIANGSON DUKE, LLC; AND
NORTHERN NEVADA COMSTOCK
INVESTMENTS, LLC,
Respondents/Cross-Appellants,
and
BANK OF UTAH, NOT INDIVIDUALLY,
BUT SOLELY AS REMAINDERMAN
TRUSTEE UNDER REMAINDERMAN
TRUST AGREEMENT (1995-2), DATED
AS OF JUNE 13, 1995, AS SUCCESSOR
TRUSTEE TO WELLS FARGO TRUST
COMPANY, N.A. (FORMERLY KNOWN
AS WELLS FARGO BANK NORTHWEST,
N.A., FORMERLY KNOWN AS FIRST
SECURITY BANK OF UTAH, N.A.)
Respondent/Cross-Respondent.

No. 83279

 

22-32073

## ORDER AFFIRMING (DOCKET NO. 79881), AND AFFIRMING IN PART, REVERSING IN PART, AND REMANDING (DOCKET NO. 83279)

These are consolidated appeals from a final judgment following a bench trial in a real property dispute and postjudgment orders denying attorney fees, awarding costs, and denying a motion to set aside the judgment under NRCP 60(b)(5) and (6). First Judicial District Court, Carson City; William A. Maddox, Senior Judge.[1]

The dispute arises from a Reciprocal Easement and Operation Agreement (REOA) that places restrictive covenants on the Northtown Plaza (Plaza) located in Carson City, Nevada. C & A Investments sued to invalidate the REOA restrictions. After a bench trial, the district court entered a final judgment in favor of defendants Jiangson Duke, LLC (Jiangson) and Northern Nevada Comstock Investments, LLC (Comstock). C & A appealed from the final judgment (Docket No. 79881). Thereafter, it also moved for relief from the judgment under NRCP 60(5) and (6), and Jiangson and Comstock filed motions for attorney fees and costs. The district court granted in part the motions for costs but denied the motion for attorney fees and the NRCP 60(b) motion. C & A appealed from the order denying the NRCP 60(b) motion, and Comstock appealed from the orders denying attorney fees and partially denying costs.[2]

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

[2]Jiangson filed a joinder in support of Comstock's arguments regarding attorney fees only.

*Appeal from the final judgment (Docket No. 79881)*

In its appeal from the final judgment, C & A first argues that the district court erred by finding that it had not demonstrated changed conditions to warrant invalidating the REOA.[3] A restrictive covenant like those in the REOA becomes unenforceable when "changed conditions have so thwarted the purpose of the . . . limitation that it is of no appreciable value to other property owners and it would be inequitable or oppressive to enforce the restriction." *Gladstone v. Gregory*, 95 Nev. 474, 478, 596 P.2d 491, 494 (1979); *Wallace v. St. Clair*, 127 S.E.2d 742, 757 (W. Va. 1962) ("Changed conditions of the neighborhood will not defeat enforcement of a restrictive covenant unless the changes are so radical as practically to destroy the essential objects and purposes of the agreement." (quoting *Rombauer v. Compton Heights Christian Church*, 40 S.W.2d 545, 553 (Mo. 1931))); *see also* Restatement (Third) of Property (Servitudes) § 7.10 cmt. a (2000) (explaining that "[t]he test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished[,] . . . serve[s] no useful purpose, and would create unnecessary harm to the owner of the servient estate"; and further urging courts to "apply the changed-conditions doctrine with caution"). "As long as the original purpose of the covenants

---

[3]C & A alternatively argues that the REOA does not restrict gaming. The district court did not resolve this argument—it denied C & A's NRCP 15(b) motion to include this claim in its complaint because the claim was not timely raised or tried by consent. Because the district court did not resolve this claim and because C & A does not challenge the denial of its NRCP 15(b) motion, we decline to consider C & A's argument that the REOA does not restrict gaming. *See 9352 Cranesbill Tr. v. Wells Fargo Bank, N.A.*, 136 Nev. 76, 82, 459 P.3d 227, 232 (2020) (declining to address an issue that the district court did not resolve); *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (concluding that issues not raised on appeal are generally deemed waived).

 

can still be accomplished and substantial benefit will inure to the restricted area by their enforcement, the covenants stand even though the subject property has a greater value if used for other purposes." *W. Land Co. v. Truskolaski*, 88 Nev. 200, 205, 495 P.2d 624, 627 (1972) (quoting *W. Alameda Heights Homeowners Ass'n v. Bd. of Cty. Comm'rs*, 458 P.2d 253, 256 (Colo. 1969)); *see also Gladstone*, 95 Nev. at 479, 596 P.2d at 494 (holding that an increased monetary value without the restriction did not justify invalidating the restriction based on changed conditions).

In reviewing the district court's judgment, we give deference to its factual findings that are supported by substantial evidence but review its legal conclusions de novo. *See W. Land Co.*, 88 Nev. at 205, 495 P.2d at 627 (reviewing the district court's factual findings for substantial evidence supporting its decision regarding the enforceability of a restrictive covenant); *see also U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 135 Nev. 199, 200-01, 444 P.3d 442, 445 (2019) (reviewing a "district court's legal conclusions de novo but giv[ing] deference to its factual findings unless they are clearly erroneous or not supported by substantial evidence"). Here, the trial evidence supports the district court's decision. The stated purpose of the REOA restrictions is to provide for the "operation and maintenance thereon of retail mercantile businesses, financial institutions and related facilities common to family-type retail shopping centers." The evidence reflected that, since 1999, C & A has continuously leased space in the Plaza to family-oriented, retail commercial businesses. Additionally, trial testimony showed the property owners benefited from the restrictions tying the properties together by creating a theme for the Plaza and the types of services available there and giving tenants confidence regarding the type of future tenants they could expect at the Plaza. Further evidence showed

that the combination of these factors increased the market value of the properties at the Plaza. Although the court heard evidence regarding the economic recession that hit retail commercial businesses in the area beginning in 2006, it also heard evidence that the area was recovering and would return to historic norms within a few years. Thus, substantial evidence supports the district court's findings that the REOA's purpose "has not been thwarted because the Plaza remains a viable family-oriented retail/commercial shopping center," and that the REOA's restrictions continue to benefit the parcel owners.

Lastly, the record reflects that enforcing the REOA restrictions would not be inequitable or oppressive because, as the district court found, C & A was on notice of several factors affecting the Plaza when it acquired its interest in the Plaza and C & A knew of the restrictions when it entered into the REOA. *See Wood v. Dozier*, 464 So. 2d 1168, 1170 (Fla. 1985) (holding that even if changed conditions "would ordinarily be sufficient to grant relief from enforcing the covenants," the fact that the party was on notice when he purchased the property precluded relief (quoting *Allen v. Avondale Co.*, 185 So. 137, 138 (Fla. 1938))). For example, when acquiring its interest in the Plaza, C & A knew that Kmart was experiencing financial difficulties nationally—ultimately leading to store closures and bankruptcy. C & A was also aware that a freeway bypass was going to be constructed around Carson City, and that traffic to the Plaza would diminish once that opened. And while the restrictions may prohibit a more profitable use of the property, that is an insufficient basis to invalidate the restrictions under the doctrine of changed conditions. *See Truskolaski*, 88 Nev. at 205, 495 P.2d at 627.

C & A next argues that the district court erred by not finding abandonment of the REOA restrictions based on prior violations of those restrictions. To support a finding of abandonment, a party must show violations of the restrictions that are so substantial and general that they "frustrate the original purpose of the agreement." *W. Land Co.*, 88 Nev. at 207, 495 P.2d at 628. Furthermore, abandonment "must be established by clear and unequivocal evidence of acts of a decisive nature." *Tompkins v. Buttrum Constr. Co. of Nev.*, 99 Nev. 142, 145, 659 P.2d 865, 867 (1983) (quoting *Lindner v. Woytowitz*, 378 A.2d 212, 216 (Md. Ct. Spec. App. 1977)). As evidence of abandonment, C & A alleged that the restrictions had been violated in five instances. The first two alleged violations include a nonprofit tenant that supplies food to local children and a pizza parlor, both of which purportedly violate the REOA restriction on certain food providers. The remaining three alleged violations include a fitness center located in a portion of the abandoned anchor tenant building, gaming machines in the anchor tenant building until 2003, and gaming machines currently in a tenant restaurant. Notably, the gaming machines at issue were operated under a limited gaming license that permits no more than fifteen gaming machines. These violations, even taken together, neither frustrate the Plaza's ability to operate and maintain "retail mercantile businesses, financial institutions and related facilities common to family-type retail shopping centers," nor do they constitute "clear and unequivocal evidence of acts" to abandon the restrictions, *Tompkins*, 99 Nev. at 145, 659 P.2d at 867. We thus conclude that these violations, occurring over the span of nearly three decades, do not equate to abandonment because they were not

Supreme Court
OF
Nevada

(O) 1947A

"so general as to frustrate the original purpose" of the agreement.[4] *See W. Land Co.*, 88 Nev. at 207, 495 P.2d at 628. Thus, we affirm the final judgment.

*Appeal from the order denying the NRCP 60(b) motion (Docket No. 83279)*

C & A argues that the district court erred by denying its motion for relief from the judgment under NRCP 60(b)(5) and (6) because it did not apply the correct standards.[5] Reviewing for an abuse of discretion, *see Rodriguez v. Fiesta Palms, LLC*, 134 Nev. 654, 656, 428 P.3d 255, 257 (2018) (holding that we review a district court's NRCP 60(b) determination for an abuse of discretion), *holding modified on other grounds by Willard v. Berry-Hinckley Indus.*, 136 Nev. 467, 469 P.3d 176 (2020), we agree, *see In re*

---

[4]Because we conclude that the violations do not support a finding of abandonment, we need not address the district court's application of the REOA's non-waiver provision.

[5]Contrary to Comstock's argument, we conclude that C & A timely filed its motion. The final judgment was predicated, at least in part, on testimony that the economy in the area would bounce back within a year or two. C & A took on that prediction in its NRCP 60(b) motion with an affidavit from a commercial real estate agent, stating that conditions had deteriorated, not improved, over that time. Given the basis for the motion, it was filed within a reasonable time for purposes of NRCP 60(b)(5) and (6). *See* NRCP 60(b)(5), (6) (requiring that motions filed under those subsections be filed within "a reasonable time"); *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (holding that "[w]hat constitutes reasonable time [under FRCP 60(b)(5) and (6)] depends on the facts of each case" and citing a case holding that there is "no outside time limit on reasonable time," and several others concluding that motions filed within four to six years were not unreasonable); *cf. McClendon v. Collins,* 132 Nev. 327, 330, 372 P.3d 492, 494 (2016) (noting that the "[f]ederal cases interpreting the Federal Rules of Civil Procedure are strong persuasive authority, because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts" (internal quotation marks omitted)).

 

*Halverson*, 123 Nev. 493, 510, 169 P.3d 1161, 1173 (2007) (recognizing that a district court "abuses its discretion when, among other things, it applies an incorrect legal standard").

Here, the district court denied C & A's NRCP 60(b) motion relying on the test outlined in *Gladstone v. Gregory*, 95 Nev. 474, 596 P.2d 491 (1979) for whether changed conditions justify nonenforcement of an otherwise valid restrictive covenant. However, under NRCP 60(b)(5), the district court must address the threshold issue of whether the judgment is prospective in nature. *See* NRCP 60(b)(5) (providing that the district court "may relieve a party . . . from a final judgment" where, in relevant part, "applying it prospectively is no longer equitable"); *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995) (explaining the standard used in determining whether a judgment has prospective application for purposes of FRCP 60(b)); *cf. McClendon v. Collins*, 132 Nev. 327, 330, 372 P.3d 492, 494 (2016). And if the judgment has prospective application, the court then must determine whether the facts warrant relief from the judgment under NRCP 60(b)(5). That inquiry is fact intensive. *Brown v. Tenn. Dep't of Fin. & Admin.*, 561 F.3d 542, 545 (6th Cir. 2009) ("Whether prospective enforcement is no longer equitable under Rule 60(b)(5) is a fact-intensive inquiry within the broad equitable powers of a district court."). The district court, thus, abused its discretion by applying the incorrect legal standard. *In re Halverson*, 123 Nev. at 510, 169 P.3d at 1173.

Additionally, if C & A is not entitled to relief under NRCP 60(b)(5), the district court had to determine whether, under NRCP 60(b)(6), "any other reason [justified] relief." *See Vargas v. J Morales Inc.*, 138 Nev., Adv. Op. 38, 510 P.3d 777, 781 (2022) (holding "that relief may not be sought under NRCP 60(b)(6) when it would have been available under NRCP

60(b)(1)-(5)"). The district court did not do so here. Specifically, the district court did not conduct a fact-intensive inquiry to determine whether the case meets the "exceptional or extraordinary circumstances" that would justify NRCP 60(b)(6) relief. *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001) (providing that courts must "intensively balance numerous factors" when considering FRCP 60(6)(6)'s application); *cf. McClendon,* 132 Nev. at 330, 372 P.3d at 494. We therefore reverse the district court's order denying the NRCP 60(b) motion and remand for the district court to apply the relevant standards under NRCP 60(b)(5) and (6) in the first instance and to conduct an evidentiary hearing, if necessary. *See Borhan v. Allison*, 541 F. App'x 740, 741 (9th Cir. 2013) (remanding for the district court to hold an FRCP 60(b)(6) evidentiary hearing to resolve factual issues in the first instance).

*Appeal from the postjudgment orders regarding attorney fees and costs (Docket No. 83279)*

Jiangson and Comstock argue that the district court erroneously determined that the REOA did not provide a basis for attorney fees. In particular, they argue that they were the prevailing parties and the attorney fee provision broadly permits recovery in "any action to enforce" the REOA.[6] We conclude that the attorney fee provision may be interpreted

---

[6]Comstock and Jiangson further argue that it is irrelevant whether the attorney fees here were incurred offensively or defensively. However, they rely on distinguishable authority that addresses a California statute that permitted a prevailing party to recover attorney fees incurred in enforcing a contract regardless of "whether he or she is the party specified in the contract or not." *Shadoan v. World Sav. & Loan Ass'n*, 268 Cal. Rptr. 207, 212 (Ct. App. 1990) (citing Cal. Civ. Code § 1717(1)). Unlike the California statute at issue in *Shadoan*, NRS 18.010(1) limits attorney fees as prescribed by the parties' agreement. NRS 18.010(1) ("The compensation

in two ways: (1) that a party may recover attorney fees only when filing an action to enforce the REOA or (2) that a party also may recover attorney fees when the REOA is used as a defense, such as here. The contractual provision therefore is ambiguous. *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (holding that a contract is ambiguous if it may reasonably be interpreted in more than one way). Given that ambiguity, we conclude that the district court did not abuse its discretion by denying the request for attorney fees. *See Pardee Homes of Nev. v. Wolfram*, 135 Nev. 173, 176, 444 P.3d 423, 425-26 (2019) (reviewing the denial of attorney fees for a manifest abuse of discretion, but reviewing de novo the question of whether a contract authorizes attorney fees); *Davis v. Beling*, 128 Nev. 301, 321, 278 P.3d 501, 515 (2012) (holding that the threshold issue for determining whether an attorney fee provision will be enforced is "whether the language . . . is clear and unambiguous").

Comstock also argues that the district court erred by limiting its recovery of costs.[7] Reviewing for an abuse of discretion, we disagree. *See Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114, 120, 345 P.3d 1049, 1054 (2015). With respect to the requested costs for expert John S. Wright, an MAI certified appraiser, Comstock did not demonstrate that the costs were

---

of an attorney and counselor for his or her services is governed by agreement, express or implied, which is not restrained by law.").

[7]To the extent that Comstock argues that it was entitled to the full amount of costs requested because C & A did not move to retax costs, we disagree. In deciding whether and how much to award as costs, the district court must follow guiding legal principles, a clear disregard of which would be an abuse of discretion. *See Ozawa v. Vision Airlines, Inc.*, 125 Nev. 556, 563, 216 P.3d 788, 793 (2009) (explaining that a clear disregard of guiding legal principles may constitute an abuse of discretion in the context of awarding costs).

SUPREME COURT
OF
NEVADA

(O) 1947A

"reasonable" or "necessary."[8] *See Cadle Co.*, 131 Nev. at 120, 345 P.3d at 1054 (holding that "costs must be reasonable, necessary, and actually incurred"); *Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348, 1352-53, 971 P.2d 383, 385-86 (1998) (holding that a district court may not award costs without evidence to determine whether the costs were reasonable); *see also Frazier v. Drake*, 131 Nev. 632, 651, 357 P.3d 365, 378 (Ct. App. 2015) (holding that "before any award of expert witness fees as costs may be made under NRS Chapter 18, the district court must have evidence before it demonstrating that the costs were reasonable, necessary, and actually incurred that goes beyond a mere memorandum of costs" (internal quotation marks omitted)). Thus, the district court did not abuse its discretion by limiting the cost award to the statutory rate for experts. *See* NRS 18.005 (setting a statutory rate of $1500 per expert); *Cadle Co.*, 131 Nev. at 120, 345 P.3d at 1054. And because Comstock's expert Gary Johnson, a commercial real estate agent, did not provide justifying documentation beyond his billing statement, which did not provide an itemized breakdown of costs, the district court similarly did not abuse its discretion by limiting his associated costs. *See Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 276-78, 112 P.3d 1082, 1092-93 (2005) (explaining that providing justification for each copy made or call placed is necessary in order for the district court to properly assess whether

---

[8]Although Comstock argues for the first time on appeal that these costs were reasonable compared to other experts in the field, this assertion is without evidentiary support in the record. We therefore cannot consider it. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . is deemed to have been waived and will not be considered on appeal.").

the cost was actually incurred and reasonable); *Cadle Co.,* 131 Nev. at 120, 345 P.3d at 1054.

For the reasons set forth in this order, we

ORDER the judgment of the district court in Docket No. 79881 AFFIRMED, the judgment of the district court denying NRCP 60(b) relief in Docket No. 83279 REVERSED AND REMANDED for proceedings consistent with this order, and the judgments of the district court regarding attorney fees and costs in Docket No. 83279 AFFIRMED.[9]

_____, C.J.
Parraguirre

_____, J.        _____, Sr.J.
Herndon                             Gibbons

cc:     Chief Judge, The First Judicial District Court
        Hon. William A. Maddox, Senior Judge
        Madelyn Shipman, Settlement Judge
        Allison MacKenzie, Ltd.
        Lemons, Grundy & Eisenberg
        Mahe Law, Ltd.
        Guild, Gallagher & Fuller, Ltd.
        Midtown Reno Law
        Carson City Clerk

---

[9]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.